## Ambassador Hotel Corporation et al., Appellants, v. Hotel Sherman Company, Appellee.

### Gen. No. 27,086.

1. TRADE MARKS AND TRADE NAMES—*invasion of property right as basis of suit for infringement of name.* The right to enjoin the use of a particular name cannot be predicated upon the weakness of defendant's right to the use of the name but must be established upon the affirmative fact that complainants have such a property right therein as to make defendant's use of it an infringement on their right.

2. TRADE MARKS AND TRADE NAMES—*effect of nonexistence of complainants at time of alleged infringement.* Corporations which were not in existence at the time of defendant's first use of the name "Ambassador" for a hotel cannot maintain a bill to enjoin such use as an infringement on their right to the use of such name in connection with other corporations organized to operate a group of hotels in various cities under that name or as a part of the "Ambassador Hotels System."

3. TRADE MARKS AND TRADE NAMES—*actual user of trade name as basis of right to enjoin infringement.* A corporation operating a hotel in the City of Chicago under the name "Ambassador" cannot be enjoined from the use of such name by New York and California corporations having either that name as a part of their corporate title or operating as a part of the "Ambassador Hotels System," where such latter companies were not operating any hotels under the name "Ambassador" at the time defendant first used that name.

4. TRADE MARKS AND TRADE NAMES—*fraud by defendant as element of infringement of trade name.* A bill to enjoin the use of a particular name for a hotel which shows on its face that when defendant first used the name in question but one of the eight complainants having a common name including that involved in the suit was actually operating a hotel under that name and that it was in a distant city, and that the complainants did not actually use the name in question to designate their group of hotels until after defendant's use of the name, fails to show that defendant's use of the name was fraudulent.

5. TRADE MARKS AND TRADE NAMES—*user and not announced intention to use as test of prior right to trade name.* An allegation showing that complainants advertised throughout the country their intention to use a particular trade name as a symbol

of their organization or group of hotels not followed by actual user as a symbol of such organization until after the use of such name by defendant is not an allegation showing prior user by complainants of such trade name, although it is alleged that one of the hotels in their group bore the name in question prior to its use by defendant.

6. TRADE MARKS AND TRADE NAMES—*absence of competition as affecting right to enjoin use of name.* Defendant's use of the name "Ambassador" for a hotel in Chicago will not be enjoined under a bill which alleges that complainants operate a group of hotels under various names in other cities as a part of the "Ambassador Hotels System" where no facts are alleged showing that defendant's hotel is in any way competitive with those of complainants', situated in distant cities, even though it is alleged that one of the complainants' hotels in Atlantic City bears the same name and that such hotel has acquired a widespread business reputation. and good will.

7. TRADE MARKS AND TRADE NAMES—*allegation of injury essential in bill to enjoin use of trade name.* Defendant's use of a particular name for a hotel in Chicago will not be enjoined under a bill which alleges that complainants' have a prior right to the use of the name in question by the user thereof in other cities in connection with a group of hotels operated by them, where there is no allegation showing any injury suffered by them as the result of the defendant's use of the name, but at most the possibility of future injury, although it is alleged that by reason of advertising and service rendered by complainants the name in question has acquired good will and value in the hotel world.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.    Heard in the Branch Appellate Court at the October term, 1921.    Affirmed.    Opinion filed October 18, 1922.    *Certiorari* denied by Supreme Court (making opinion final).

GOTTLIEB & MARKHEIM, for appellants; H. N. GOTTLIEB and HARRY MARKHEIM, of counsel.

FELSENTHAL, STRUCKMANN & BERGER, for appellee; A. R. MILLER, of counsel.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

This is an appeal by the complainant corporations,

from a decree of the circuit court of Cook county, sustaining a demurrer to their amended and supplemental bill, interposed by the defendant, and dismissing the bill. By their bill the complainants pray that defendant be restrained and enjoined from applying the word "Ambassador" to a hotel owned by it in the City of Chicago, the complainants claiming such action on the part of the defendant to be in violation of their rights to the exclusive use of that name for their hotels and the hotel system under which they operate. The original bill was filed November 17, 1920. The defendant interposed a demurrer to that bill and it was sustained, and thereafter, on March 3, 1921, the complainants filed their amended and supplemental bill. The defendant again interposed a demurrer and again the court sustained the demurrer. The complainants elected to stand by their amended and supplemental bill, whereupon, a decree was entered dismissing the same for want of equity, to reverse which, the complainants have perfected this appeal.

The amended and supplemental bill filed by complainants alleges the following facts: The Delaware Corporation owns and operates a hotel known as the "Ambassador" at Atlantic City, New Jersey. The construction of this hotel was commenced on or about May 5, 1917, and it was opened to the public about June 21, 1919. The name "Ambassador" was applied to this hotel on or about July 1, 1918. The amended and supplemental bill alleges that "since prior to May 5, 1917, said hotel has received conspicuous tribute and mention throughout the United States in substantially all of the leading newspapers, and in all of the periodicals and publications devoted to the hotel business, * * * in general news comments, reports and discussion" and "the said hotel has been extensively advertised * * * since prior to the date of its opening," both prior to and after public announcement by the defendant of its intention to designate its

hotel in question, in the City of Chicago, by the name "Ambassador." The bill then alleges that the Atlantic City Ambassador Hotel caters to the most refined and discriminating among the hotel-patronizing public and maintains the highest type of service; that it has accommodated many thousand persons from all parts of the world, and to an extensive degree from the locality of the City of Chicago and that numerous patrons repeatedly returned to the Atlantic City Ambassador, by reason whereof, upon its opening in June, 1919, it "immediately attained an eminence that gave to the name 'Ambassador' throughout the United States a special significance and value for hotel purposes."

The bill further alleges that from an early time in the course of the erection of the Atlantic City Ambassador Hotel until the date of its opening and thereafter until the establishment of the "Ambassador Hotels System" thereinafter mentioned it "was identified, and maintained close reciprocal business relations, resulting from an identity of management and control, with the California resort hotels at Pasadena, known as 'Hotel Huntington,' 'Hotel Maryland' and 'Hotel Green'; with the 'Palace' and 'Fairmount' Hotels at San Francisco, California; with the 'Alexandria Hotel' and projected 'California Hotel' (now Ambassador Hotel) at Los Angeles, California; with the 'Belvedere Hotel' (now Ambassador Hotel, formerly 'The Potter Hotel') at Santa Barbara, California, and with a hotel in course of construction in the City of New York, tentatively called 'Linnard Hotel' (now Ambassador Hotel); that these hotels last mentioned were famous throughout the United States for their hospitality and refinement, * * * which reputation * * * had been established, preserved and augmented * * * upwards of ten (10) years; and that the identity of management and control, and the affiliation as part of an integral system of hotels

between the said Atlantic City Ambassador and the other named hotels became widely known through extensive advertising    *    *    *    which identified the name 'Ambassador' as a symbol of membership in said system of hotels and constituted from a time antedating the actual opening of said Atlantic City Ambassador and in an intensified degree from the day of the opening thereof, a valuable asset attached and incident to the said name 'Ambassador.' "

The two hotels mentioned at Los Angeles, California, are the property of the complainant Ambassador Hotel Corporation, a California corporation, which was formerly known as the Wilshire Boulevard Hotel Corporation. It acquired the Hotel Alexandria, April 1, 1919, and has since operated it under that name. It appears from allegations in the bill that this hotel had been operated prior to its acquisition by the above-mentioned complainant corporation, under the ownership and management of the Wilshire Boulevard Hotel Corporation, for a period of over ten years, and the bill alleges that the good will of this hotel, to which the complainants have succeeded "and which has been an incident to said name 'Ambassador' since a date prior to the opening of said Atlantic City Ambassador, as aforesaid, has been developed through years of conscientious and faithful service to the public."

The complainant California corporation commenced the construction of the "California Hotel" on or about May 1, 1919. This hotel was completed and opened to the public as the "Ambassador" on or about January 1, 1921.

The complainant Santa Barbara Hotel Company acquired a hotel in Santa Barbara, California, which had up to that time been operated as "The Potter Hotel," and, the bill alleges, had acquired an international reputation, which it had enjoyed for upwards of fifteen years. The complainant referred to ac-

252     APPELLATE COURTS OF ILLINOIS.

Ambassador Hotel Corp. v. Hotel Sherman Co., 226 Ill. App. 247.

quired this hotel on February 1, 1919, and thereafter operated it as the "Belvedere" and later, as described in the bill, this name was changed to "Ambassador" on December 1, 1919, and, the bill alleges, "its good will, developed through years of conscientious and faithful service, to which your orators have succeeded, and which has been an incident to said name 'Ambassador' since a date prior to the opening of said Atlantic City Ambassador as aforesaid, has acquired concrete commercial value of large worth."

The New York corporation, party complainant, commenced the construction of a hotel in that city under the name "Linnard Hotel" on or about May 1, 1919. The name of this hotel was likewise changed to the "Ambassador" on December 1, 1919. At the time of the filing of the amended and supplemental bill, this hotel was still in the course of construction.

It thus appears from the bill that these eight hotels had been operated under different names from ten to fifteen years except the "Ambassador Hotel" at Atlantic City which had been opened to the public June 21, 1919, and that in that year they were operated under a common control and management. How long that common control and management had obtained is not disclosed by the bill, but it was apparently from some time early in the year 1919, as the bill gives such dates as the times when different complainants acquired their hotels. Included in this same group were the two other hotels in the course of construction, the "California Hotel," at Los Angeles and the "Linnard Hotel," at New York.

The bill further alleges that as a result of negotiations conducted at Los Angeles in November, 1919, "a still closer amalgamation was effected on November 29, 1919," between five of these hotels, namely, The Ambassador at Atlantic City, The Alexandria and The California (under construction) at Los Angeles, The Belvedere at Santa Barbara, and The Linnard

Hotel (under construction) at New York, "whereby the former affiliation of said hotel units was rendered more intimate, and their association as integral units in a concert or system of hotels" was then provided for under the designation of "Ambassador Hotel System." It is further alleged that on the day prior to the effecting of this amalgamation, namely, on November 28, 1919, "the intention was definitely conceived of changing the names of said California Hotel, said Belvedere Hotel and the Linnard Hotel to 'Ambassador' and of continuing the association" of these three hotels, with the Atlantic City Ambassador Hotel and the Los Angeles Alexandria Hotel under the style of "Ambassador Hotels System." The bill then alleges that this intention as thus conceived on November 28, 1919, was, on November 29, 1919, "avowed and declared by your then existing orators and the said respective changes accomplished"; and that on the following day, November 30, 1919, these changes and the adoption of "Ambassador Hotels System" as the title of this group of five hotels "was announced and formal statements thereof were issued to the press at, to wit: Los Angeles"; and, further, that on December 1, 1919, reports of this announcement were published in the leading newspapers throughout the United States. The bill further alleges that the changes in the names of the various hotels mentioned and the adoption of the style "Ambassador Hotels System" were conceived, executed and announced by the complainants without any knowledge by them of the purpose of the defendant to apply the name "Ambassador" to its hotel. It is then alleged that as a result of these transactions, at Los Angeles, in the latter part of November, 1919, "the management and administration of all said hotel properties of your orators was unified and committed to the same persons, and it was agreed that said hotels should operate and co-operate as units in said Ambassador System,

\* \* \* and promote and advance the respective and common interests of the several members; that in execution of said agreement and in order to further weld the said Ambassador System and more clearly to signify the homogeneity of the standards and service of the several units and to extend the repute and mutual identity of its several members, a similar equipment and more nearly identical methods of operation were prescribed and enforced" for the five hotels making up the group; that common monograms and an identical type of uniform were adopted; that the names of several hotels making up the group appeared on the stationery of each, and that each recommended all the others to their respective patrons "and in many other and divers ways the collective interests, repute, custom and good will of the said Ambassador System were cultivated and advanced"; that this method of operation has been continued since November 29, 1919, all of which the bill alleges, "confirmed and augmented the value and good will attached to the said name 'Ambassador,' utilized, thereafter as well as theretofore, to the reciprocal advantage and profit of said 'Atlantic City Ambassador' and said four other hotels"; that the System has operated with conspicuous success and profit and acquired a fixed individuality in the hotel world of this country, and resulted in substantial and profitable benefit to the complainants, and that the collective good will of said System, in which the complainants are participant, "and which is the equivalent in the contemplation of the public of the designation 'Ambassador' or 'Ambassador System' has a great and inestimable value"; and that the said System represents an aggregate value of upwards of thirty million dollars.

It is further alleged in the bill that since the name "Ambassador" was first applied to the hotel of that name at Atlantic City, on July 1, 1918, the affiliation

of that hotel with the others above named was extensively published and advertised throughout the country, as a result of which, "the term 'Ambassador' indicated and connoted the System of hotels of which said Atlantic City Ambassador has been a member, prior to as well as subsequent to the adoption of the designation 'Ambassador Hotels System' "; and that this advertising was commenced previous to the opening of the Atlantic City Ambassador Hotel, on June 21, 1919, and has extended since that time continuously.

It is further alleged that "in order to be in a position to afford appropriate corporate basis to promote the influence, recognition and fame of said Ambassador System and to augment the commercial benefit derivative therefrom, and to increase the membership of said System and to extend the said name 'Ambassador' to other hotel units in other cities   *   *   * including the City of Chicago   *   *   * corporations sponsored by interests approved by said associated corporations and under the sanction of all the said associated corporations, were organized" within a month after the establishment of the Ambassador Hotels System on November 21, 1919, under the corporate name of "Ambassador Hotel Corporation," in the States of Minnesota, Michigan, Wisconsin and Illinois, and that these corporations are under the management and administration of the same persons and committed to the same agreement with regard to the Ambassador System, as the other complainants.

The bill further alleges that on or about September 1, 1919, one Lewin, being the owner of certain real property in the City of Chicago, commenced the construction of a thirteen-story hotel building, to which he applied the name "The Lorraine Hotel" and that in connection with this project there was a bond issue in the sum of $1,000,000, secured by trust deed, said issue of bonds being purchased by one of the banks in

the City of Chicago, and that in these bonds the proposed hotel was described as "The Lorraine Hotel." It is further alleged that the Hotel Sherman Company is an Illinois corporation, which owns and operates a hotel in Chicago, known as the Hotel Sherman, and that in October, 1919, the defendant purchased or acquired some interest in "The Lorraine Hotel" and that thereafter the management and operation of this hotel was vested in the defendant, but the complainants allege that they are not advised of the precise terms of the agreement between Lewin and the defendant, but they allege, on information and belief, that Lewin is still the owner of the hotel in question and that the defendant has no interest therein but an executory interest acquired under its contract with Lewin.

The bill then alleges that on November 30, 1919, the defendant caused announcement to be made in the public press of Chicago, and otherwise, that it was building a two million dollar hotel "Ambassador" in Chicago, giving the location, that being "The Lorraine Hotel" above referred to, and that at this time defendant was well aware of the existence of the Ambassador Hotel at Atlantic City and of its wide and eminent repute, and substantial good will, and its affiliation with the other hotels of the complainants and "that said name was applied by the said Sherman Company to the said Sherman Ambassador Hotel with the deliberate intent to appropriate to itself the good will and esteem which your orator, the Delaware Ambassador corporation, and its associates aforesaid, had and might thereafter develop, and to mislead the public into the belief that the said Sherman Ambassador was affiliated with the hotels of your orators, and thereby to secure to itself the benefit, good will and publicity with which the designation 'Ambassador' had theretofore, and might thereafter become, invested"; that within two weeks thereafter, the com-

plainant Delaware corporation notified the defendant that the contemplated employment of the designation "Hotel Ambassador" to its hotel "was a violation of, and an infringement upon, the rights of your orators aforesaid" and requested the defendant to renounce the unlawful employment of that name; that subsequently, on September 3, 1920, the complainant Delaware corporation addressed a communication in writing to the president of the defendant company, setting forth the rights of the Delaware corporation and requiring the defendant to refrain from further use of the designation "Hotel Ambassador"; that the defendant duly received this communication but wholly failed and neglected to comply with the demands it contained; and that thereafter, on December 15, 1920, the defendant opened its "Hotel Ambassador" to the public, since which time it has continued to conduct and operate that hotel under that name, and still continues to do so.

It is then alleged in the bill that numerous members of the traveling public who are frequent visitors in the various places where the hotels of complainants are located, and who reside in or customarily visit Chicago, including many patrons of the complainants, have mistaken the defendant's hotel to be a member of complainants' Ambassador Hotels System, or affiliated with the hotels of the complainants, solely by reason of the identity of name, and that innumerable other travelers will be similarly misled if the defendant is suffered to continue the use of the name "Ambassador," which the bill designates as an unlawful practice and a wilful deception; that the defendant's hotel building, equipment, appointments, service and standard of operation are markedly inferior in every respect to the hotels of complainants and that complainants will be charged with such inferiority if defendant uses the name "Ambassador," and as a re-

258 APPELLATE COURTS OF ILLINOIS.

Ambassador Hotel Corp. v. Hotel Sherman Co., 226 Ill. App. 247.

sult thereof the complainants will be deprived of patronage which they would otherwise have.

Further, complainants allege that, in accord with their established policy, they will continue to spend large sums of money in advertising their hotels, representing the Ambassador Hotels System, and if the defendant is permitted to continue to use that name for its hotel, the public will be misled and the defendant will reap the advantages of this advertising and complainants will be put to a further expense in an effort to minimize this deception and to advise the public of the separate and distinct ownership and management of this hotel, so that complainants may not be deemed to have any connection with that hotel or be held responsible for, or charged with, its operation. The bill then alleges that in the development of their several hotels complainants have issued bonds and securities, which are distributed through the United States, and that complainants and other corporations which may from time to time become members of the Ambassador Hotels System will hereafter issue bonds and securities and generally seek commercial credit and public confidence; that irrespective of the name of the issuing corporation, such bonds and securities are generally known by the name "Ambassador"; that there are outstanding in Chicago and vicinity, and to some extent throughout the country, the bonds issued by Lewin, as above set forth, and secured by a lien on the defendant's hotel "Ambassador" and that these bonds, notwithstanding the technical name thereof, are commonly known as "Ambassador" bonds; that the defendant, in the conduct of its business, will from time to time seek commercial credit and public confidence, and the defendant and the owners of the Sherman Ambassador may hereafter issue further bonds, and such obligations will, in accordance with customary experience, be commonly referred to as "Ambassador" securities; that by rea-

son of the premises confusion has resulted and will continue to result as to the respective credit and responsibility of complainants, and the defendant, and the security and value of their obligations, unless the defendant be restrained from further employment of the name "Ambassador."

It is then alleged in the bill, on information and belief, that the word "Ambassador" had never been applied in connection with a hotel or similar enterprise, prior to its adoption by the complainant Delaware corporation as the name of its hotel at Atlantic City, and that this name is not now applied by any person, firm, association or corporation, other than the complainants and the defendant.

The prayer of the bill is "that the word 'Ambassador,' either singly or in combination with other words or symbols, as a designation for a hotel or other similar or kindred enterprise, may be declared to be the special property and a constituent part of the good will of your orators; that the use of such designation by the said defendant may be declared to be an infringement upon, and appropriation of, the good will and trade of your orators, and an unfair and improper effort to mislead the public and to attract trade and custom through the efforts and achievements of your orators; that an injunction may be allowed, both temporary and permanent, restraining the said defendant, its officers, agents, employees and associates, from using or in anywise employing such designation for its said proposed hotel, or any other hotel or similar or kindred enterprise."

In our opinion, the rights of the complainants, as against the defendant, with respect to the relief prayed for in the bill, must be determined as of the date on which the defendant adopted and publicly announced the use of the name "Ambassador" in connection with its hotel, which was on November 30, 1919. If on that date the announcement and adoption

of the use of this name, by the defendant, was not
such as to constitute any infringement upon any prop-
erty rights in that name in the possession of the com-
plainants, the latter could not prevent such action on
the part of the defendant, and it follows that if the
defendant, therefore, had the right as against the
complainants to use the name in connection with its
hotel at that time, it had the right to retain it, and to
continue its use.

In order to make their bill proof against demurrer,
the complainants must have alleged in it such facts
as will show or tend to show that at the time the de-
fendant adopted and publicly announced and adver-
tised the name "Ambassador" as the name of its new
hotel then being constructed, they had developed a
good will in connection with the hotel business under
that trade name. A trade name, similar to a trade-
mark, is merely a protection for good will and is not
the subject of property except in connection with an
existing business. The only theory upon which the
bill of complainants would lie is that known as unfair
competition. As the court said in *Borden Ice Cream
Co. v. Borden's Condensed Milk Co.*, 201 Fed. 510:
"Relief against unfair competition is granted solely
upon the ground that one who has built up a good
will and reputation for his goods or business is en-
titled to all of the resultant benefits. Good will or
business popularity is property, and, like other prop-
erty, will be protected against fraudulent invasion.
The question to be determined in every case of unfair
competition is whether or not, as a matter of fact, the
name used by the defendant had come previously to
indicate and designate the complainant's goods. Or,
to put it in another way, whether the defendant, as
a matter of fact, is, by his conduct, passing off his
goods as the complainant's goods or his business as
the complainant's business."

The use of the name "Ambassador" by the defendant in connection with its hotel does not involve the date when that hotel was opened to the public. The commercial user of that name by the defendant began with the public announcement made by it through the press on November 30, 1919, which is referred to in the bill. The question to be determined then is whether or not this name, then brought into use by the defendant, had come at or previous to that time to designate the hotels of the complainants in such a way as to give the complainants a property right in the name, for which they might have protection in a court of equity.

The right of the complainants to the relief prayed for may not be predicated upon the weakness of the right of defendant to use of the trade name involved, but must be established, if at all, upon the affirmative fact that the complainants had such a property right in the use of the name as made the defendant's use of it an infringement. In *Maxwell v. Hogg*, L. R. 2 Ch. 307, to which complainants have called our attention, and to which further reference will be made hereafter, Cairns, L. J., said: "The first question to be determined is, is there a right, or is there property on the part of the plaintiff, to be protected? For if there is only loss sustained, without there being a right of property to be protected, this court cannot interfere; and finally, I think we must leave out of the case any observation which may possibly have to be made with regard to the conduct of the defendant. The right of the plaintiff must stand upon his own title and not upon any action of the defendant." That case involved two appeals, one being the bill filed by Maxwell against the Messrs. Hogg, seeking to restrain their use of the name "Belgravia" in connection with the publication of a magazine and the other being a bill filed by the Messrs. Hogg against Maxwell seeking the same relief, and the court denied

any relief to either party. The weakness of the case made out by Messrs. Hogg did not prevent the court from finding that Maxwell, likewise, had failed to make out a case.

On November 30, 1919, when the defendant adopted and announced the use of the name "Ambassador" in connection with its hotel under construction, what was the situation of the complainants as disclosed by the allegations in the amended and supplemental bill? There were then eight hotels in operation, which, according to the bill, "maintained close reciprocal business relations, resulting from identity of management and control." These eight hotels consisted of The Huntington, The Maryland, and The Green, at Pasadena, California, The Palace and The Fairmount, at San Francisco, California, The Alexandria, at Los Angeles, California, The Belvedere, at Santa Barbara, California, and the Ambassador, at Atlantic City, New Jersey. According to the allegations in the bill, the first seven hotels mentioned had been in operation for upwards of ten years, and as to the hotel at Santa Barbara, it is alleged that previous to February 1, 1919, when the name "Belvedere" was adopted, it was known as "The Potter," and had been in operation for upwards of fifteen years. It will thus be seen that as to these seven hotels, whatever good will they had established in the hotel world, had been built up under their respective names, no one of which involved the use of the word "Ambassador." The only Hotel Ambassador in the group was the hotel at Atlantic City, and, according to the allegations of the bill, the construction of that hotel was begun in May, 1917, and it was given the name of "Ambassador" in July, 1918, when it was still under construction, and the hotel was opened to the public in June, 1919, so that on November 30, 1919, when the defendant began the use of the name "Ambassador" in connection with its hotel in Chicago, the Atlantic City Hotel had been

making use of that name for about a year and a half. There were two other hotels in the course of construction on November 30, 1919, which were included in the group of hotels described by the complainants in their bill as maintaining close reciprocal business relations, resulting from an identity of management and control, one at Los Angeles, then known as The California Hotel, and one at New York, then known as The Linnard Hotel. The former was opened to the public in January, 1921, and the latter had not been opened at the time the complainants filed their amended and supplemental bill.

Only five of the hotels in the group of ten above described are involved in the suit at bar, namely, The Alexandria and California Hotels at Los Angeles, The Belvedere Hotel at Santa Barbara, The Linnard Hotel at New York, and The Ambassador Hotel at Atlantic City. According to the allegations in the bill, representatives of the corporations owning these five hotels conceived the idea, on or about November 28, 1919, of forming a system of hotels and calling it the "Ambassador Hotels System." They proceeded to carry out that idea, and, on December 1, 1919, the day after the defendant had adopted and announced the use of the name "Ambassador" in connection with its hotel in Chicago, they announced the use of the name "Ambassador" in connection with The California, Belvedere and Linnard Hotels, and changed the names of these hotels accordingly, and announced that they, together with the Ambassador Hotel at Atlantic City and the Alexandria Hotel at Los Angeles, would continue in close reciprocal business relations and under an identical management and control and be operated under the name and style of the Ambassador Hotels System. The remaining four corporations complainant were not then in existence but were organized about a month after, as the bill alleges, "in order to be in a position to afford

264 . Appellate Courts of Illinois.

Ambassador Hotel Corp. v. Hotel Sherman Co., 226 Ill. App. 247.

appropriate corporate basis to promote the influence, recognition and fame of said Ambassador System and to augment the commercial benefit derivative therefrom, and to increase the membership of said System and to extend the said name 'Ambassador' to other hotel units in other cities of the United States," these corporations being sponsored by interests approved by the other corporations complainant.

It would seem to be clear that unless each complainant corporation is shown, by the allegations of fact contained in the bill, to be entitled to the relief prayed for, the bill is demurrable. Clearly, the corporations complainant which were not even in existence until a month after the defendant adopted and announced the use of the name "Ambassador" in connection with its hotel in Chicago could have no rights of any kind in that name, such as would entitle them to prevent the defendant making such use of the name. In our opinion it is equally clear that at the time the defendant adopted and announced the use of the name "Ambassador" in connection with its hotel, the California corporation, which was operating The Alexandria Hotel and constructing The California Hotel, and the Santa Barbara corporation, which was operating the Belvedere Hotel, and the New York corporation, which was constructing the Linnard Hotel, then had no property rights of any kind in the name "Ambassador." That name had never been applied to their properties and such good will as they had built up in the hotel world had come to be theirs under the names by which they had theretofore been known. The only party complainant which, by any stretch of the imagination, could, at that time, be said to have a property right in the word "Ambassador," in connection with the operation of its hotel, was the Delaware corporation, then operating the Hotel Ambassador at Atlantic City.

Does the amended and supplemental bill make out

a case of unfair competition on the part of the defendant as against the Delaware corporation, admitting all the facts alleged to be true? The essence of unfair competition is fraud. *DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co.,* 297 Ill. 359, 371. In presenting their argument in support of this appeal, counsel for the complainants assert ''the fundamental precept, that where the essence of the wrong complained of is the conscious simulation of the guise of another in order to appropriate the public esteem which the other enjoys, all doubt as to the effectiveness of the scheme will be resolved against the wrongdoers.'' In other words, it is argued that the apparent reason for adopting the name ''Ambassador'' by the defendant was a fraudulent one, and that, in using this name, the defendant was guilty of a conscious simulation of the guise of the associated complainants, including the Delaware corporation, in order to make it appear that it was associated with them, so that it might thus enjoy their public esteem and appropriate their patronage. In our opinion, the facts alleged in the bill do not support that argument. If the defendant was guilty of fraudulent conduct or a conscious simulation of the guise of complainants, or any of them, it was so guilty at the time it adopted the name ''Ambassador'' and announced the use of that name to the public, in connection with its hotel then being constructed. At that time the Ambassador Hotels System, as such, was not in existence. Four of the complainants did not exist. The hotels of two of the complainants were under construction, under names other than ''Ambassador.'' Two of them were operating hotels under names other than ''Ambassador'' and one of them was operating a hotel under the name of ''Ambassador,'' and those of the complainants which were operating hotels were operating them under the same control and management and each of them recommended and advertised the others. The

266    APPELLATE COURTS OF ILLINOIS.

Ambassador Hotel Corp. v. Hotel Sherman Co., 226 Ill. App. 247.

group of hotels then in operation was not known by the name of the one which was called the Hotel Ambassador any more than it was known by the name of any of the other hotels in the group. The hotels then being operated by complainant corporations were widely scattered, one being in Atlantic City, two in Los Angeles and one in Santa Barbara. To say that in adopting and announcing the use of the name "Ambassador" for its hotel in Chicago, the defendant was consciously simulating the guise of the group of three hotels then in actual operation by corporations that are parties complainant in the suit at bar, or the larger group of eight hotels that had at that time been operating for apparently a period of about a year, under a unified control and management, or any one of these hotels, including the Atlantic City Ambassador Hotel, in order to appropriate the public esteem which these hotels enjoyed as a group, is making an allegation, which, in our opinion, is in no way supported by the facts alleged. The esteem which the public may have had for the group of hotels referred to was not attached to the name of any single hotel in the group. At the time the defendant adopted and announced the use of the name "Ambassador" for its hotel, it would seem to have been manifesting the fact that it was not affiliated with this group of hotels, for, at that time, each of the hotels in the group was operating under a name which was different from all the others and no two of them were alike.

The bill alleges that the affiliation of the Ambassador Hotel at Atlantic City with the old established members of the group, that had been operating for so many years, under different names, became widely known through extensive advertising "which identified the name 'Ambassador' as a symbol of membership in said system of hotels and constituted from a time antedating the actual opening of said Atlantic City Ambassador and in an intensified degree from the date of the opening thereof, a valuable asset at-

Ambassador Hotel Corp. v. Hotel Sherman Co., 226 Ill. App. 247.

tached and incident to the said name 'Ambassador.' "
In our opinion this allegation is a *non sequitur*. By
it the complainants are apparently attempting to in-
oculate the word "Ambassador," which was the name
of the newest hotel in the group, with the old and
established good will of the other hotels in the group
that had been operating for ten or fifteen years under
other names. Of course, that cannot be done. No
facts are alleged in the bill showing or tending to
show that the good will possessed by the group of
hotels described in the bill attached to the name of any
one of them more than that of any of the others, and
least of all to the name of the one which was the last
one to become affiliated with the group, or the one
which had most recently been established.

Counsel for the complainants contend that "the
crucial circumstance in the case at bar is the delib-
erate and successful purpose of the defendant to simu-
late membership in the Ambassador System." It
was quite impossible for the defendant to indulge a
deliberate purpose, in announcing and adopting the
use of the name "Ambassador" in connection with its
hotel, to simulate membership in the Ambassador
Hotels System, when, at the time it so adopted and
announced the use of that name, there was no such
System known to the public, and, according to the al-
legations of the bill, it had only been conceived by the
complainants a day or two previous to that time, and
was not announced publicly until after that time.

Counsel in their respective briefs refer to many of
the leading cases on the law of trade names and of un-
fair competition, many of which, in our opinion, are
not applicable to the peculiar facts involved in the al-
legations found in this amended and supplemental bill.
If complainants were a group of corporations which,
at the time the defendant adopted and announced the
use of the name "Ambassador" in connection with its
hotel, then under construction, had been operating a

268 APPELLATE COURTS OF ILLINOIS.

Ambassador Hotel Corp. v. Hotel Sherman Co., 226 Ill. App. 247.

group of hotels over the country under the name of "Ambassador" and the style of the Ambassador Hotels System, and thus had established a good will in the name, and a property right thereto, and their bill made allegations of such facts, we would be presented with a different situation than that which is presented by the facts now before us, and, in that event, many of the cases to which our attention has been called might be in point.

In arguing that their case is made out by reason of the fact that the bill clearly establishes that they secured the exclusive right to employ the term "Ambassador" in connection with their hotels by a prior user, and that, therefore, the adoption of the name by the defendant, and the announcement of its use, on November 30, 1919, in connection with its hotel, then under construction, is without legal significance, the complainants contend that actual application to commerce is the exclusive criterion in determining priority, and in this connection it is argued that the prior user by the complainants cannot be controverted, because the trade name "Ambassador" was actually employed in business as a symbol of complainants' organization five months before its selection by the defendant and eighteen months before the defendant's hotel had actually commenced to function as an operating "enterprise." In our opinion this statement is not warranted by the facts set forth in the bill. According to those facts the trade name "Ambassador" was not actually employed as a symbol of complainants' system or group of hotels until after the selection and public announcement of the use of this name by the defendant, namely, on December 1, 1919. In connection with the contention that actual commercial use is the test of priority, complainants rely largely on the case of *Maxwell v. Hogg*, L. R. 2 Ch. 307, to which reference has already been made. In 1863, Hogg conceived the idea of publishing a maga-

zine under the name of "Belgravia," and caused it to be registered. Without any knowledge of this fact, Maxwell, in 1866, registered the same name and proceeded to arrange to put the publication out, and in that connection advertised extensively for several months. Hogg and his associates, upon learning of the activities of Maxwell, advertised their magazine for the first time, when Maxwell's projected magazine had been advertised for some two months, and in great haste they prepared a number of their magazine and published it. Maxwell then filed his bill to enjoin Hogg from further publication of that magazine and the latter also filed a bill to enjoin Maxwell. In denying the relief sought by Maxwell, the court held that it was necessary for him to show some property right or interest in the subject-matter of his complaint, but that he had acquired no such property right or interest in the name "Belgravia," by reason of his expenditures in preparing to put out a magazine under that name nor by advertising his intent so to do. The court further held that it would have been different if the advertisement of the intention to publish had been followed by actual publication, on the part of Maxwell, for then he would have "given something to the world" and there would be "some consideration for the world's giving him a right; but in the case of mere advertisement he has neither given, nor come under any obligation to give, anything to the world; so that there is a total want of consideration for the right which he claims."

That case, like so many others to which counsel for the complainants have called our attention, involves facts which distinguish it from the case at bar. In the case cited, the defendant had publicly registered the name "Belgravia" three years prior to any advertising or any other activity on the part of the complainant. In the case at bar, the adoption of the name "Ambassador" by the defendant and its announce-

ment of the use of that name in connection with its hotel was followed by the opening and actual operation of the hotel in December, 1920, some three months before the amended and supplemental bill was filed.

In our opinion, the position of a complainant, seeking to protect his alleged rights in a trade name, cannot be determined by the test of consideration which the court seems to have adopted in the case cited. Nor can the question of prior user be taken as the sole test, although, in many cases, it may be an important element in determining the respective rights of the parties. Cases in which statements are made to the effect that the exclusive right to the use of a trademark or a trade name is founded on priority of appropriation or use, must be interpreted in the light of the facts involved in the case in which those expressions are used. The case of *Hanover Star Milling Co. v. Metcalf,* 240 U. S. 403, and of *Allen & Wheeler Co. v. Hanover Star Milling Co.,* 240 U. S. 403, which were decided together in that court, were cases involving the use of the name "Tea Rose" as designating a style or brand of flour. In the course of its opinion the court said: "Expressions are found in many of the cases to the effect that the exclusive right to the use of a trade-mark is founded on priority of appropriation. Thus, in *Delaware & H. Canal Co. v. Clark,* 13 Wall. [U. S.] 311, 323, reference is made to 'the first appropriator'; in *McLean v. Fleming,* 96 U. S. 245, 251, to 'the person who first adopted the stamp'; in *Amoskeag Mfg. Co. v. Trainer,* 101 U. S. 51, 53, the expression is 'any symbol or device, not previously appropriated, which will distinguish,' etc. But these expressions are to be understood in their application to the facts of the cases decided. In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon

goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant, unless, at least, it appear that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like.''

In the case at bar, the Delaware corporation, operating the Ambassador Hotel at Atlantic City, and the defendant, adopting and announcing the use of the name ''Ambassador'' in connection with its new hotel in Chicago, were independently employing the name ''Ambassador'' in connection with the operation of hotels in the separate markets of Atlantic City and Chicago, cities remote from one another, and, in such a situation, in our opinion, as said by the Supreme Court in the cases cited, the question of prior appropriation or use is legally insignificant. We have, heretofore, pointed out that in view of the facts involved in the amended and supplemental bill, to which we have called attention, our opinion is, that it cannot reasonably be said that the defendant selected the name ''Ambassador'' with a ''design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like.''

As to such of the hotels as had been in operation for some years, by corporations which are parties complainant, prior to the adoption and announcement of the name ''Hotel Ambassador'' by the defendant, such advantage as there may have been in a prior user rests with the defendant rather than with the complainants. Certainly, if the defendant company adopted and publicly announced the name of its hotel, under construction, as the ''Hotel Ambassador'' on a given date, and thereafter, some individual or corporation, which had for some years been operating a hotel in the City of

Chicago under some other name, such, for example, as "California" or "Belvedere" or "Alexandria" or "Linnard," announced through public advertising that the name of the hotel in question had been changed to "Ambassador," and, thereupon, a bill in equity was filed against the defendant, praying that an injunction might issue restraining it from using the name "Ambassador," the complainant, claiming an infringement of his rights to the use of that name, by virtue, among other things, of the fact that he was the first to use the name in the actual operation of a hotel, it would seem clear that the bill would not make out a case for the relief prayed for. The case would not be altered in principle if the complainant had been operating a hotel under one of the names mentioned in some city other than Chicago.

Returning to a consideration of the case as made out by the facts alleged in the amended and supplemental bill, so far as they affect the Delaware corporation operating the "Ambassador" Hotel at Atlantic City, we are of the opinion, that to entitle that party complainant to the relief prayed for, the facts alleged must be such as to show that the use of the name "Ambassador," by the defendant in connection with its hotel in Chicago, would be to the injury of the property rights of the Delaware corporation. Of course this proposition would apply to all parties complainant, but we are of the opinion that a case is not made out by the facts alleged in the amended and supplemental bill, as to those parties other than the Delaware corporation, for the other reasons to which we have referred.

The right of action in such cases as this is not based upon possible fraud or imposition upon the public, but is maintained solely for the protection of the property rights of the complainant. *American Washboard Co. v. Saginaw Mfg. Co.,* 103 Fed. 281; *Armstrong Cork Co. v. Ringwalt Linoleum Works,* 235 Fed. 458; *Bor-*

*den Ice Cream Co. v. Borden's Condensed Milk Co.,*
201 Fed. 510; *Munn & Co. v. Americana Co.,* 83 N. J.
Eq. 309; *Corning Glass Works v. Corning Cut Glass
Co.,* 197 N. Y. 173.  The only allegation in the amended
and supplemental bill, having to do with alleged in-
jury to the complainant Delaware corporation (even
giving it the benefit of being a part of the Ambassador
Hotels System, which was announced after the defend-
ant had adopted and advertised the use of the name
"Ambassador" as to its hotel), is to the effect that
numerous members of the traveling public have mis-
taken the defendant's hotel to be a member of the
"Ambassador Hotels System," or affiliated with the
hotels owned by the Delaware corporation and its as-
sociates, and that the building, equipment, appoint-
ments, service and standards of operation of the de-
fendant's hotel are inferior to those of the hotels of
the Delaware corporation and those associated with it,
who will, therefore, be judged by and charged with
such inferiority if the identity of name is continued
and as a result will be constantly deprived of patron-
age which they would otherwise secure.  It is signifi-
cant that although the amended and supplemental bill
was not filed until March 3, 1921, about a year and a
quarter after the defendant had announced the adop-
tion and use of the name "Ambassador" for its hotel,
and about three months after that hotel had been
opened to the public, the bill alleges no facts showing
or tending to show that the Delaware corporation, or
any of its associates, had, up to that time, suffered any
injury to their business by reason of the adoption and
use of that name by the defendant.

It is difficult to see how the operation of a hotel un-
der the name "Ambassador" in Chicago, or any other
of the principal cities of the United States, could have
any effect whatever on the patronage of the hotel op-
erated under that name by the Delaware corporation
in the famous resort city of Atlantic City.  And, cer-

tainly, it would have none whatever on the patronage of hotels which had for years been in operation under other names, and had thus acquired such good will as they enjoyed under those names. The amended and supplemental bill does not allege as to the only hotel which, up to that time, had been operating under the name "Ambassador," nor as to the others that, up to the time it was filed, the patronage had been affected, nor any facts which, in our opinion, show or tend to show that it would be affected if the status complained of were permitted to continue.

A suit such as the one at bar is based on the alleged fact of unfair competition, and, as our courts have frequently had occasion to say, before there can be unfair competition, there must be competition. *Hanover Star Milling Co. v. Allen & Wheeler*, 208 Fed. 513; 240 U. S. 403; *Carroll v. Duluth-Superior Milling Co.*, 232 Fed. 675, and cases there cited. The Delaware corporation deals in hotel service at Atlantic City and the defendant deals in a like commodity in Chicago. At the time the defendant adopted and publicly announced the use of the name "Ambassador" for its new hotel, it was the only hotel in the country, other than the Atlantic City hotel, using that name. In that situation, it seems quite clear that there could be no real competition by those two hotels, and there could, therefore, be no unfair competition, and use by the defendant of the name "Ambassador" could not be held, by reason of the facts alleged, to amount to an infringement of any property rights of the Delaware corporation.

But, the complainant Delaware corporation and its associates contend that they had the right to expand their hotel business and extend it to other cities of the country, and, to that end, the Ambassador Hotel Corporation in the States of Minnesota, Michigan, Wisconsin and Illinois have been organized since the defendant adopted and announced the use of the name

in question for its hotel, and that even if they have not as yet established a hotel "Ambassador" in Chicago, the defendant should be restrained from such action as might interfere with their right to do so in the future. As to the Delaware corporation, the effect of such an argument would be to grant that party complainant a right in perpetuity to the use of this name in the hotel business in the City of Chicago, and, if carried out to its logical conclusion, in all cities of the country, whether that corporation ever chose to exercise it or not. That any single hotel operating in any city in the United States under a given name should be decreed by a court of equity to have such a right is, in our opinion, quite out of the question. As was said by the court in *Sartor v. Schaden,* 125 Iowa 696: "A trade name * * * is of necessity local, not founded upon any authority or right from the State, but based upon usage in the particular locality or localities in which the party is doing or seeks to do business." We deem that proposition applicable to the trade name used in connection with the hotel business, where the matter involved is hotel service and accommodation, afforded in two such cities as Chicago and Atlantic City, a thousand miles apart. The same principle has been applied in other lines of business. *Kaufman v. Kaufman,* 223 Mass. 104, 111 N. E. 691; *C. A. Briggs Co. v. National Wafer Co.,* 215 Mass. 100. As we have already intimated, a different case might have been made out if the facts alleged in the amended and supplemental bill disclosed that at the time the defendant adopted this name for its hotel, then under construction, and publicly advertised and announced the use of that name in connection therewith, the various parties complainant had theretofore been operating hotels under that name in various cities of the country under a unified control and management as a single system, which had come to be known under that name. In such a state of facts, each

of the parties in connection with all the others might be said to have established such a good will in the name and such a property right in its use as to require a court of equity to enjoin the use of the name as applied to a hotel, by any other party, though it were sought to do so by the party enjoined in a city which at the time did not contain a hotel of the name involved, but we do not deem that question to be presented by the facts alleged in this bill, and, therefore, we do not wish to be understood as passing upon it. But we do hold that where, at the time the party sought to be enjoined adopts and publicly announces the use of the name in question for its hotel, the parties complainant seeking to enjoin him have been operating hotels in various cities under different names, though under a unified control and management, only one of which has been operating under the name sought to be protected, a case is not made out for the relief prayed.

We are, therefore, of the opinion that the chancellor was correct in sustaining the demurrer of the defendant to the amended and supplemental bill of the complainants and, therefore, the decree appealed from is affirmed.

*Decree affirmed.*

O'CONNOR, J., concurs.

TAYLOR, J., specially concurring: I concur in the opinion that the decree of the chancellor sustaining the demurrer of the defendant should be affirmed. It seems quite obvious that the adoption of the name "Ambassador" by the defendant was not merely owing to its euphony or orthography, but simply to obtain some advantage, if possible, from the already established prestige of the hotel which bore that name. That being true, may the complainants by the present bill prevent its use by the defendant? There seem to be two sufficient reasons why they may not: First,

the complainants having no contractual and property relations are not entitled to sue jointly; second, Chicago is an area too remote from the place of business of the defendants.

As to the jurisdictional question: The rights, if any, of the complainants depend upon different sets of facts and under such circumstances they are not entitled to sue jointly. Nor would they be entitled to claim the right to sue jointly in order to prevent a multiplicity of suits. That is not allowable save where the same questions of law and similar matters of fact are involved.

As to the merits of the case, assuming the court was entitled to take jurisdiction: It is hardly reasonable, considering the distances the various hotels of the defendant are away from Chicago, to rule that their rights would be materially infringed if another hotel, such as that of the defendant, located in Chicago, were allowed to retain a similar name.