GENERAL INDUSTRIES CO. v. 20 WACK-
ER DRIVE BLDG. CORPORATION
et al.

No. 43 C 1307.

District Court, N. D. Illinois, E. D.

Oct. 4, 1944.

Parkinson & Lane and Ralph M. Snyder, all of Chicago, Ill., and King Fauver, of Elyria, Ohio, for plaintiffs.

Barrett, Barrett, Costello & Barrett, of Chicago, Ill., for defendants.

HOLLY, District Judge.

Plaintiff seeks to restrain the defendant, General Finance Corporation, from changing its corporate name to General Industries Corporation. Plaintiff is a corporation organized under the laws of the State of Ohio and is engaged in a general manufacturing business. It employs some 1700 persons manufacturing various metal and plastic products, just now being wholly engaged in war work making fuses, control boxes, antenna reel motors, tank defroster motors, rotary coils, antenna relays, and approximately a thousand different articles made of plastics. It has in the past manufactured typewriters, heat regulators, road markers, automobile horns, movie projectors, massage machines, plumbing supplies, telephone switchboards, small motors and other articles of that character. It is undecided at this time what activities it will engage in after the war but contemplates going into the electric field and has been approached with reference to the manufacture of washing machine motors. It advertises extensively in trade papers and does business throughout the United States. It is not admitted to do business in the State of Illinois but employs agents who take orders which are transmitted to the home office at Cleveland, Ohio, and accepted there. Defendant, General Finance Corporation, a Michigan corporation, was engaged in the general finance business but after Pearl Harbor when the manufacture of automobiles stopped and its business of financing automobiles sales ended it concluded to diversify its business. It now has four special divisions, four corporations of which it owns all the stock. One, Bi-Metallic Corporation, makes small tools such as hammers, hatchets and axes, another, McAlear Manufacturing Company, makes automatic control equipment for the industrial field, the third, Hanlon-Waters Company makes automatic control equipment for the oil industry and portable pipe line pumping units and the fourth, Climax Engineering Company, makes gasoline engines for oil drilling purposes. The defendant also controls a building corporation which owns the Civic Opera Building, a 20 story office building, and it does some business financing accounts. The products of both complainant and General Finance Corporation are sold in highly specialized markets and not to the public generally.

The stock of both corporations has been sold to the public generally, complainant having some 100 stockholders in Illinois. The stock of General Finance Corporation is listed on the New York Curb Exchange and quotations on the sale price of stock of complainant are published in the Cleveland, Ohio, *Plain Dealer*.

Because of the change in the nature of its business, defendant concluded to amend its charter and sent out notices to its stockholders calling for a meeting to consider the question of amending its articles of incorporation to change its name to General

Industries Corporation and authorizing it to engage in a general manufacturing and sales business.

Both complainant and defendant agree that this case is governed by the law of the State of Illinois and defendant contends that under the decisions of the Supreme Court of this state plaintiff, a foreign corporation not licensed to do business in Illinois, may not prevent defendant from taking any name it may choose even though that name may be identical with the name of defendant organized under the laws of another state, but which has been selling its products in Illinois. To sustain this proposition it cites Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 142 Ill. 494, 30 N.E. 339. But that case is easily distinguishable from the case at bar. The defendant was organized as a corporation in Illinois under the name of Hazelton Tripod Boiler Company prior to the incorporation of plaintiff in New York as the Hazelton Boiler Company.[1] Further the court said plaintiff was "seeking to contest the right to use of a corporate name which this state, in furtherance of its own public policy, and in the exercise of its own sovereignty, has seen fit to confer upon one of its own corporations." 142 Ill. at page 515, 30 N.E. page 343. Here complainant is not a junior corporation endeavoring to prevent the use of a name already granted by the State of Illinois, but to enjoin the assumption of a name, practically identical with its own, which will be used not only in Illinois but throughout the United States where both corporations are doing business.

On this question, that a foreign corporation may not maintain an action to prevent a corporation taking in the state of its incorporation a name similar to that of the foreign corporation, counsel also cites Lehigh Valley Coal Company v. Hamblen et al., D.C., 23 F. 225 and Lawyers Title Ins. Co. v. Lawyers Title Insurance Corporation, 71 App.D.C. 120, 109 F.2d 35. In the Lehigh Valley Coal Company case, Judge Gresham, sitting in District Court, did say as a matter of general law that a foreign corporation could not prevent the formation in Illinois of a corporation bearing the same name as that of the foreign corporation, but that doctrine was repudiated by the Circuit Court of Appeals of this circuit in Peck Brothers & Co. v. Peck Brothers Co., 113 F. 291, 62 L.R.A. 81.

The Lawyers Title Ins. Co. case, supra, is so different in its facts that it does not help defendant's case. The Lawyers Title Insurance Company was a corporation of the District of Columbia organized in 1922 which had taken in 1926 the name under which it was operating at the time of filing its suit. Defendant was a Virginia corporation organized in 1925 which had confined its business to Virginia until 1938 when it entered the District and commenced to compete with plaintiff. The court denied the injunction sought by plaintiff for the reason that many years before defendant entered the district plaintiff had formed a sort of partnership arrangement with two other title companies in the District and thereafter did not use its corporate name in its business. In the course of its opinion, however, the court said, 109 F.2d at page 40 that "under ordinary circumstances, a corporation acquires rights in its name that are to some extent exclusive. A prior incorporation may enjoin a later one from assuming an identical or confusingly similar name." And again, 109 F.2d at page 43, the court said:

"Generally the prior appropriator may enjoin use of an identical name by a subsequent arrival. Normally the latter seeks an unfair advantage, a 'free ride' on another's established good will; he is subjectively guilty and objectively deceptive. Usually his only purpose is to create confusion as to source, and benefit by it. Ordinarily any other name would serve as well, except to deceive. In such circumstances little evidence of injury, actual or probable, is needed—the mere identity makes it practically inevitable. From this fact comes the idea that a conclusive presumption of unfairness and injury exists. On such facts the presumption should be conclusive. Fair trade protection requires it."

The facts in Ambassador Hotel Corp. v. Hotel Sherman Co., 226 Ill.App. 247, cited by defendant also are quite unlike those of the present case. At the time the Hotel Sherman had given the name Ambassador to its new hotel in Chicago there was no other hotel of that name nearer than Atlantic City and the Court found as a mat-

---

[1] There were other equities in favor of plaintiff to which the court gave little attention.

ter of fact that no injury could come to plaintiff from the use of the name by the Hotel Sherman Company.

It is undoubtedly true as contended by defendant that where no possible harm can come to the corporation which has first taken the name in controversy it cannot enjoin the use of it by the one adopting it later but we do not have that situation here. Plaintiff is engaged in a general manufacturing and sales business. At the present time plaintiff is engaged very largely in war work. Defendant is not now producing articles which compete with the fuses plaintiff is producing for the government. Both corporations now sell their product in a highly specialized market. But the proposed amendment to defendant's articles of incorporation authorize it to take a name practically identical with plaintiff's name and to manufacture and sell every sort and kind of product. There is nothing at all to prevent it from producing and selling the same sort of goods that plaintiff produced before the war started. Nearly every business concern in America, manufacturing or selling, is uncertain as to its future. Any manufacturing corporation may find it necessary to make extensive changes in the kind of product it turns out. Trade conditions may bring plaintiff and defendant in direct conflict with each other. Defendant was compelled, its president says, because of war conditions, to almost completely change the character of its former business. It may find it necessary to change again. It may be that both corporations will find it necessary to change their selling methods and abandon highly specialized markets. Plaintiff has built up its business through the years under the name it now bears. It is entitled to be protected in the use of that name as against a new comer whose charter authorizes it to manufacture and sell any product whatsover, and which is now doing business not only in Illinois, but in the county generally, as is complained.

Further, the shares of stock of both corporations are traded in by the public. The prices of the stock of plaintiff are listed in Cleveland papers and of defendant on the New York Curb Exchange. The nearly exact similarity of the two names will be very confusing to persons dealing in or desiring to purchase or sell such shares.

The Illinois case more nearly related to the situation we have here than any other is Lady Esther, Ltd., v. Lady Esther Corset Shoppe, Inc., 317 Ill.App. 451, 46 N.E.2d 165, 167, 148 A.L.R. 6. There plaintiff had built up a large and lucrative business in the manufacture and sale of cosmetics. It advertised extensively and had become well and favorably known in the trade. Defendant did not deal in cosmetics but sold at retail corsets, brassieres, underwear, house dresses and other ladies wearing apparel. Defendant contended that it did not compete with plaintiff, that there was no palming off of its goods as those of plaintiff and no injury to plaintiff, but the court held that plaintiff was entitled to injunctive relief even though the parties were not competitors for business. In the course of the opinion the court quoted from an article in Harvard Law Review, 370, in which the author said:

"Insistence by the courts upon the presence of competition between the parties can only be justified upon a theory that good will and reputation can only be damaged by competitors. But such a theory is untenable, in the light of human experience. If the defendant's conduct is likely to cause confusion of the traders, so that the public believes or is likely to believe that the goods of the defendant are the goods of the plaintiff or that the plaintiff is in some way connected with or is a sponsor for the defendant, then a sufficient case is made out for injunctive relief. The result of a contrary rule would make the good-will and reputation of the plaintiff depend not only upon the conduct of the plaintiff but also upon the acts of the defendant and the excellence, or, what is more likely, the inferiority, of his products. * * *

"Another change that has come with the realization of this broad basis for 'unfair competition' is the elimination of the requirement of 'fraud.' Although the law of unfair competition has evolved through the application of principles of fraud, with the result that, in this country at least, there will be no relief where the defendant has acted in good faith toward both the plaintiff and the public, yet a realization that the true basis of equity's interference in such cases is not fraud but the protection of good-will has caused many courts to question the propriety of inquiry into the defendant's mental state."

Many other cases have been cited by defendant to sustain its position. I have examined them all but they are so unlike the

case at bar that I do not consider them in point.

Great confusion may result from the use by the defendant of the name General Industries Corporation. I see no reason why it should persist in its determination to use a name so similar to plaintiff's. I am of the opinion that plaintiff is entitled to the injunctive relief prayed in its complaint.