### LIPSCHUTZ v. QUIGLEY, Prohibition Agent.

(District Court, E. D. Pennsylvania. February 14, 1923.)

No. 9952.

1. **Intoxicating liquors** ⬤⇒248—**Evidence held to show probable cause for issuance of search warrant.**

Evidence lawfully obtained that one holding a wholesale permit to sell certain described liquors at his place of business later had less than such quantity at such place, with no valid permits to purchasers on file, but a number of forged permits, and that he had not made the requisite returns of sales, *held* sufficient to show probable cause and to authorize issuance of a search warrant.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Intoxicating liquors ⬡⟶247—Holder of permit not exempt from search.**

Possession of a valid permit to possess and sell liquor does not exempt the holder from search and seizure of liquor in his possession, where there is ample evidence that the permit is used as a cloak for unlawful sales, on forged and fictitious permits to purchase, and that he has not made the returns of sales required by law.

**3. Intoxicating liquors ⬡⟶248—Information obtained through inspection lawfully acquired.**

Information acquired by an internal revenue officer on lawful inspection of the premises of the holder of a permit to sell liquors is lawfully obtained, and may be made the basis of a search warrant.

**4. Intoxicating liquors ⬡⟶249—Under lawful search warrant for liquor, incriminating papers may be seized.**

Under a search warrant for liquors, lawfully issued under Prohibition Act, tit. II, § 25, forged and fictitious permits found on the premises, and apparently used in unlawful sale of liquor, may properly be seized and used as evidence of such unlawful sales.

Petition of I. L. Lipschutz against Andrew A. Quigley, Prohibition Agent, to have search warrant declared illegally issued and for return of property seized thereunder. Petition dismissed.

William A. Gray, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Dist. Atty., and Henry Friedman, Asst. U. S. Dist. Atty., both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The petitioner, under a permit duly issued, is authorized to sell liquor at wholesale at premises 226 South street, Philadelphia. Upon a search warrant issued by a United States commissioner, the respondent, Andrew A. Quigley, a federal prohibition agent, seized upon the said premises 1,857 cases of wine, 249 barrels of wine, 283 cases of cordials, 425 cases of gin, and a large number of what purported to be vendees' permits to purchase from Lipschutz by various vendees named thereon, under various dates from April, 1921, to May, 1922; also Lipschutz's record book of liquor transactions at the premises. The search warrant was supported by the affidavit of Agent Quigley, setting forth that the liquors and papers were possessed and used in violation of the Volstead Act.

It appears, from Quigley's affidavit and supporting affidavits of others, that on September 26, 1922, Quigley, with Connor, another prohibition agent, and Perry, an inspector of customs, visited the premises at 226 South street and examined papers found there, purporting to be permits on form 1410A, authorizing the purchase by vendees named therein of intoxicating liquors. At that time the liquors described in the search warrant were seen by Quigley upon the premises.

Quigley avers that the permits are false and fictitious; that they are not printed upon paper bearing the government water mark; that the serial numbers are not printed in type used upon government forms, and that the names and signatures of the vendees thereon are false, fictitious, and forged; that they were shown to the persons named as vendees, who denied that they were their signatures; that the signature of the Prohibition Director is forged, and the initials "E. W. T." of his subordinate authorized to sign his name are forged; that the

permits state over Lipschutz's signature that delivery of the liquors named therein was made to persons known to him or properly identified. It is averred that the vendees had never ordered or received the liquors.

The averments of the false and fictitious nature of the permits are supported by the affidavits of other prohibition officials, and the averments of the forgery of signatures is supported by the affidavits of at least 30 persons who are named thereon as vendees. The averment of forgery of the signature of Prohibition Director Davis and of Twaddell is supported by their affidavits. It is also shown that no director's copies of the forged permits have been filed, although required by regulation 60 to be filed within 24 hours of sale and delivery; that no carriers' permit numbers appear upon any of the permits; that there were also found upon the premises four vendors' copies of form 1410A, two of which purported to authorize the N. J. Drug Company, 147 South Orange avenue, Newark, N. J., to purchase 250 cases each of whisky, and two of which purported to authorize the same permittee to purchase 250 cases each of brandy; that these permits are false and fictitious; that they are not printed upon government paper, nor identical in type and make-up with government forms of permits; that the name of Prohibition Director Davis is forged thereon, also that of Prohibition Director Brown of New Jersey; that no return was made to the office of the Prohibition Director of New Jersey of such permits as required by the regulations, and that the N. J. Drug Company was not found at the premises in Newark therein named; that all of these permits stated over the signature of I. L. Lipschutz that they were delivered to the N. J. Drug Company, known to him or properly identified; that none of them contained thereon the carrier's permit number; that the manager for Lipschutz at the premises produced as evidence of confirmation of the sales a certain post office registry receipt which it is shown by affidavits, was for a letter addressed to one Alfred Smyth at Atlantic City, N. J.; that three false and fictitious permits purporting to be vendor's copies, dated April 1, 1922, purported to authorize the Arctic Drug Company of Atlantic City, N. J., to purchase 100 cases of brandy, 50 cases of gin, 300 cases of Scotch whisky, and 50 cases of cordials. These papers purported to be issued by Prohibition Director Brown of New Jersey, whose signature thereto is stated in an affidavit of Director Brown to be forged.

In an affidavit by one Podolnick it is stated that he is trading as the Arctic Drug Shop at Atlantic City, N. J.; that he never signed the permits purporting to bear the signature of the Arctic Drug Company, nor to the best of his knowledge is there a concern in Atlantic City bearing the name of Arctic Drug Company, or similar name, other than his own concern; that the premises purporting to be the place of business of the Arctic Drug Company are occupied as a pool room, and there is no drug company at said premises. It is stated over Lipschutz's name that the Arctic Drug Company, to whom the liquor purported to be delivered, was to him personally known or properly identified. These permits do not contain the carrier's permit num-

ber, are not printed on government paper, nor in the style of type used upon government permits.

The confirmation of these sales, purporting to be signed by the prohibition director of New Jersey, was attempted to be shown by a return post office registry receipt purporting to be signed by Prohibition Director Brown of New Jersey, by Heubner, agent. It was shown by affidavits that the registered letter represented by the said receipt was not addressed to Prohibition Director Brown, but addressed to one Vanderbilt, at Newark, N. J., and sent by one J. D. Davis, of 1430 Chestnut street, Philadelphia.

It appears that Lipschutz is holder of a basic government permit issued January 27, 1922, authorizing him to sell certain liquor of a kind and quantity described. While there is included therein 1,021 cases of whisky, this whisky was not at the premises on September 26, 1922. An examination of Lipschutz's records fail to disclose a single valid government permit.

[1] It is contended on the part of the petitioner that the facts set forth in the affidavits are not sufficient to justify the conclusion of probable cause that Lipschutz has been engaged in unlawful sales of liquors, or that the liquors possessed by him were intended for use in violation of any of the provisions of the Volstead Act. It is also contended that, even if there is probable cause to conclude that unlawful sales of liquor have been made, the seizure was unlawful, because the petitioner held a duly issued permit to keep and sell for lawful purposes.

As to the first proposition: The effect of the documentary evidence in connection with the evidence of disappearance from the premises of quantities of liquor, for the sale of which there was no valid permit upon the premises, undoubtedly establishes probable cause for belief that the petitioner has continuously and deliberately carried on the sale of intoxicating liquors under forged and fictitious permits to persons not entitled to purchase.

[2] As to the second proposition, that the liquor and papers are not subject to seizure because the petitioner held a valid permit to sell, the petitioner relies upon the case of Francis Drug Co. v. Potter (D. C.) 275 Fed. 615, and In re Alpern et al. (D. C.) 280 Fed. 432. I have no cause to disagree with the ground upon which in those cases the seizure was held unlawful. In the Francis Drug Co. Case, Judge Morton says:

"I do not think the mere fact of an illegal sale on the drug company's premises sufficient to warrant a finding that a stock of liquor was being held for illegal purposes, involving a repudiation of its obligations under its permit."

And this ruling was followed in the Alpern Case by Judge Hazel, of the Western district of New York. But in neither of those cases were the facts at all parallel to those in the case at bar. There, for all that appears, there were single unlawful sales, and the learned judges were therefore justified in holding that such illegal sales did not involve a repudiation of the obligation of the permittees under the permits.

In this case, the evidence is sufficient to justify the conclusion that

the permit was merely held as a cloak for continuous and persistent unlawful disposition of the permittee's stock of liquors; that they were held and used, not in any sense in fulfillment of Lipschutz's obligations under the permit, but in a general unlawful conduct of his liquor business. The intent with which the liquors seized were to be used may be judged by his conduct.

For the purposes of this application, the facts set out in the affidavits must be taken as establishing an intention in the possession of the liquors to use them in violating the Volstead Act. For the purposes of this application, therefore, it is shown that no property rights existed in any of the liquor or property.

[3] A further contention by the petitioner that the search warrant was issued upon information obtained upon a previous search which was held to be illegal is not justified. It is shown by the affidavits accompanying the search warrant that the information was lawfully obtained upon an authorized inspection of the premises upon September 26, 1922, prior to the previous unlawful search.

[4] While the question was not specifically raised at the argument nor in the briefs, it may be pertinent to observe that, while section 25 of title II of the Volstead Act (41 Stat. 315) provides only for searches of liquor or property designed for the manufacture of liquor intended for use in violating the title, or that has been so used, and declares that no property rights shall exist in any such liquor or property, and therefore the search warrant must be based upon grounds rendering such liquor or property forfeitable, the limitation of the property declared to be forfeitable does not invalidate the seizure of the alleged false and fictitious permits nor afford ground for an order for the return of such papers.

As the search warrant is held valid for the seizure of the liquor, and upon the premises were also found the permits which were the means apparently used in the disposition of the liquor, their seizure and retention were therefore proper. The instant case is to be distinguished from the case of United States v. Kraus et al. (D. C.) 270 Fed. 578, for the papers seized here were the very instruments through which the unlawful sales of liquor were accomplished, and were subject to seizure in the same manner as if a search warrant were issued for stolen property and in the search burglar's tools were discovered and seized. Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575.

The petition is dismissed.