## UNITED STATES v. 18 BARRELS OF ALCOHOL, etc.

District Court, E. D. Pennsylvania. June 2, 1927.

**1. Intoxicating liquors ⟨⟩250—Evidence in forfeiture proceeding held to warrant finding that alcohol was possessed by permit holder for illegal disposal (National Prohibition Act, tit. 2, §§ 25, 33 [Comp. St. §§ 10138½m, 10138½t]).**

Evidence that prohibition agents, watching barn, saw touring car enter it, and, looking through an opening, saw cases unloaded into car, which, after seizure of car as it left barn, were found to contain whisky, and evidence that agents thereupon obtained search warrant, and on search of barn found 18 barrels of alcohol, *held*, under National Prohibition Act, tit. 2, §§ 25, 33 (Comp. St. §§ 10138½m, 10138½t), to warrant finding in forfeiture proceedings that such alcohol was kept for purpose of being disposed of in violation of National Prohibition Act, notwithstanding claimant, who helped in loading cases of whisky, had basic permit to use alcohol in manufacture of fruit extracts; there being no evidence of how alcohol was acquired.

**2. Intoxicating liquors ⟨⟩250—In forfeiture proceeding, question whether alcohol was intended for use in violating law is question of fact for court.**

In proceeding to forfeit alcohol seized, question whether it was intended for use in violation of law is a question of fact, to be determined by the court on all circumstances appearing from the evidence.

Libel by the United States to forfeit 18 barrels of alcohol, lately possessed by Anthony Mausoleno. Decree for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa.

H. Horace Dawson, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge. This is a proceeding by libel filed by the government to forfeit 18 barrels of alcohol. From the evidence the court finds the following facts:

[1] On the night of December 22, 1923, government agents had under observation a certain three-story building at 474 North Centre street, Pottsville, Pa. There was a barn in the rear of the building, and the officers saw a touring car going into the barn; the door being closed after it. Looking into the barn, either through a window or through an opening of some kind in the building, they saw four cases of bottles being loaded upon the car; the respondent here, Mausoleno, being one of the men engaged in the loading. The car then backed out and was promptly seized by the officers. They discovered in it 46 bottles of whisky, in four cases. They then obtained a search warrant, returned and searched the barn, and discovered and seized the alcohol, which is the subject of this proceeding.

The respondent offered in evidence a basic permit, class H, authorizing him to use alcohol for other than beverage purposes in the manufacture of certain fruit extracts for soft drinks. The permit was issued for 250 wine gallons per quarterly period, and the application, which was also offered, provided that "the maximum quantity of intoxicating liquor which will be produced or received during any quarterly period of the calendar year, plus the quantity on hand in the beginning of such period, will be 500 proof gallons of alcohol." The permit was dated May 27, 1921, and upon it was stamped the consent of the director to a change of address from the original address to 474 North Centre street, where the seizure took place. This stamped approval bore date February 21, 1922. The respondent did not testify, and offered no other evidence, although in his answer he asserts that he was discharged by a United States commissioner in a prosecution for illegal possession of the alcohol in question.

The respondent argues that the basic permit of May 27, 1921, which apparently was still in force, together with the commissioner's approval of the change of address of his business of February 21, 1922, established the legality of his possession of the liquor at the time of the seizure. In connection with this position, it will be noted that there is no evidence as to how the alcohol found on the premises was acquired. The permit which the respondent offered is a basic permit, and does not give him the right to purchase alcohol. For that he must have a permit to purchase, and there is no evidence of any such permit. It would certainly not be argued that a permit to use alcohol for manufacturing soft drinks would give the holder

the right to acquire it by manufacturing it himself, or by buying it from a bootlegger. His permit would not protect him in his possession, if his liquor were so acquired. The Regulations also provide (section 403) that permits to purchase will be issued only to cover kinds and quantities of liquor which are covered by the basic permit of the applicant. Under this basic permit, as construed in connection with the application, the amount of alcohol which the respondent could legally have on hand at any one time was 250 wine gallons, or about 5 barrels. The quantity found was 18 barrels.

These considerations, in reality, only go to the question of the burden of proof. Under section 33 of title 2 of the National Prohibition Act (Comp. St. § 10138½t), if the respondent was a person not legally permitted to possess liquor, the possession would be prima facie evidence that such liquor was kept for the purpose of being disposed of in violation of the law. It is not necessary, however, for the government to rely upon this presumption. It might be conceded for the purposes of this decision that the respondent was a person "legally permitted * * * to possess liquor," and that the presumption created by section 33 of the act does not apply. But it does not follow that he would be immune from search and seizure, regardless of the use which he might choose to make of the liquor. Section 25 of title 2 of the act (Comp. St. § 10138½m) provides that "it shall be unlawful to * * * possess any liquor * * * intended for use in violating this title, * * * and no property rights shall exist in any such liquor." The ultimate fact—the purpose for which the respondent held the liquor—may be discovered and proved by lawful process and evidence properly obtained thereunder, though the possession be prima facie lawful.

In this case, the officers saw the respondent engaged in a violation of the law. He was personally present in the nighttime in the building where his stock of alcohol was stored, assisting in loading a large quantity of liquor upon an automobile, which was immediately dispatched for an indisputably illegal purpose. The entire transaction took place on the respondent's premises and in his presence. The officers obtained a search warrant and legally searched his premises. I think that the evidence is sufficient to establish the fact that the alcohol seized was kept for the purpose of being disposed of in violation of the provisions of the National Prohibition Act, and so find. The most that the evidence of the permits could accomplish would be to throw upon the government the burden of proof of showing the unlawful character of claimant's possession, and in the opinion of the court the government has met and overcome the burden.

[2] The question of whether or not the property seized was intended for use in violation of the law is a question of fact, which in this proceeding must be determined by the court, upon all the circumstances appearing from the evidence. It is true that it has been held that a single sale by a permittee was not, under the facts of those cases, enough to prove that all the liquor held was intended for sale. Francis Drug Co. v. Potter (D. C.) 275 F. 615; In re Alpern (D. C.) 280 F. 432. In Lipschutz v. Quigley (D. C.) 287 F. 395, Judge Thompson, in discussing the two cases cited said: "There, for all that appears, there were single unlawful sales, and the learned judges were therefore justified in holding that such illegal sales did not involve a repudiation of the obligation of the permittees under the permits." I agree, but I do not think that any of the decisions go so far as to hold, as matter of law, that in no case can evidence of a single violation of law by a permittee be sufficient to prove an unlawful intention as to his whole stock. "Yet, as in the case of a nuisance, a single sale may be enough to show that it was an instance of a habitual practice; that depends upon the circumstances which attended it." Steckler v. U. S. (C. C. A.) 7 F.(2d) 59. For example, it would not be contended that if, by a single sale, the permittee attempted to dispose of the bulk of his stock, or a substantial part of it, such evidence would be insufficient. The circumstances of each case must govern the finding. While the evidence in this case does not reach the abundant measure of proof which appeared in Lipschutz v. Quigley, supra, it is sufficient.

An order of forfeiture will be made.