## Bernard A. Eckhart et al. v. Consolidated Milling Company.

1. TRADE-MARKS—*When Use of, Will be Enjoined.*—If the court can see that a complainant's trade-marks are used or imitated in such a manner as probably to deceive customers or patrons, the motives of the defendant in adopting them are immaterial and the piracy should be checked at once by injunction. It need not appear that there was a fraudulent intent of the defendant to dispose of his goods as the goods of another, that the public are in fact misled into purchasing the defendant's goods, believing them to be those of the complainant, or that such a state of facts exist that the court must necessarily infer that the public will be deceived into purchasing the defendant's goods.

Injunction.—Appeal from the Superior Court of Cook County; the Hon. NATHANIEL C. SEARS, Judge, presiding. Heard in this court at the March term, 1897. Order modified and affirmed. Opinion filed October 21, 1897.

KNIGHT & BROWN, attorneys for appellants.

MANTON MAVERICK, attorney for appellee.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

This is an appeal from an order granting a preliminary injunction on bill and answer.

The appellee is a manufacturer of and dealer in flour in Minneapolis, in the State of Minnesota, and, since 1891, has manufactured and sold in the Chicago, Illinois, market, in sacks or other receptacles, flour of three different qualities and named, respectively, "Christian's Superlative," "Pettit, Christian & Co. Superlative" and "Ceresota," the sacks or receptacles in which said flour was contained being marked or branded with those names. The appellant, the Eckhart and Swan Milling Co., a corporation, the stock of which is wholly owned by the appellants, Eckhart and Swan, and which is wholly controlled by them, is a manufacturer of and dealer in flour in Chicago, Illinois. The appellants delivered to the purchasers thereof flour manufactured by them in bags with the marks or brands before mentioned thereon. Appellants, not denying the allegation in appellee's bill that appellee had the exclusive legal right to use the marks or brands in question in the disposition and sale of flour, explain their, appellants', use of the bags as follows: They say that their principal customers were bakers, and that sometimes, by agreement with the bakers, appellants made a price on large quantities of appellants' flour in bulk, the bakers to furnish bags for delivery of the flour, and that among the bags furnished by the bakers, in accordance with such agreement, and in which the flour furnished was delivered, were bags marked or branded with the marks or brands of appellee; that appellants also purchased from bakers second-hand jute bags, among which were bags marked with the brand of appellee, and that they used all such bags for the purpose of delivering to such bakers flour sold to them in bulk by appellants, the object of such use of the bags furnished by the bakers and the second-hand jute bags furnished by appellants being, that appellants might be able to sell their flour at a less price than they would if they furnished new bags. Appellants, in their answer, deny that the bakers or the public were deceived, or that appellee was in any way injured by their use of the bags, or that appellants intended by such use to deceive any one.

Counsel for appellants contend that in order to warrant

a preliminary injunction, it must appear that there was a fraudulent intent of defendant to dispose of his goods as the goods of another, or that the public are, in fact, misled into purchasing the defendant's goods, believing them to be those of the complainant, or that such a state of facts is shown that the court must necessarily infer that the public would be so deceived into purchasing the defendant's goods. We can not accede to this proposition.

It is not necessary to entitle the complainant to relief to show that the defendant acted with a fraudulent intention.

In Pratt's Appeal, 117 Penn. St. 401, the master found in his report that the defendant did not intend to perpetrate an actual fraud in adopting the plaintiff's mark, and the lower court says in an opinion, "I have carefully examined the testimony upon this point, and can discover no evidence of fraud or bad faith in the use of the trade mark," and a perpetual injunction was granted. On appeal, the court say: "If the defendant's print is an imitation of that of the plaintiff, if it is calculated to deceive and mislead, the motive of defendant in adopting it is not material so far as the law of the case is concerned, however much it might affect it in a moral point of view. The protection which equity extends in such cases is for the benefit of the manufacturer, and to secure to him the fruits of his reputation, skill and industry. The protection of the public is another consideration and one that does not usually enter into such cases," etc.

To the same effect are the following cases: Holmes et al. v. Holmes, etc. Mfg. Co., 37 Conn. 278; Filley v. Fassett et al., 44 Mo. 168.

In the last case the court say: "Nor is it necessary to show that any one has, in fact, been deceived, or that the party complained of made the goods. (2 Sandf. S. C. 607; 25 Barb. 79; 23 Eng. L. & E. 53–4; 2 Sandf. Ch. 597.) Nor is it necessary to prove intentional fraud. 'If the court sees that complainant's trade-marks are simulated in such a manner as *probably* to deceive customers or patrons of his trade or business, the piracy should be checked at once by injunc-

tion.'"    4 McLean, 519; 2 Barb. Ch. 103; Blackwell v. Wright, 73 N. C. 310; Davis v. Kendall, 2 R. I. 566; Millington v. Fox, 3 Myl. & Cr. (14 Eng. Ch. R.) 338.

In the last case the court says:    "I have no reason to believe that there has, in this case, been a fraudulent use of the plaintiffs' marks.    It is positively denied by the answer, and there is no evidence to show that the defendants were even aware of the existence of the plaintiffs as a company manufacturing steel; for although there is no evidence to show that the terms 'Crowley' and 'Crowley Millington' were merely technical terms, yet there is sufficient evidence to show that they were very generally used, in conversation at least, as descriptive of particular qualities of steel.    In short, it does not appear to me that there was any fraudulent intention in the use of the marks.    That circumstance however, does not deprive the plaintiffs of their right to the exclusive use of those names, and therefore I stated that the case is so made out as to entitle the plaintiffs to have the injunction made perpetual."

In Coffeen v. Bruton, 5 McLean, 256, the court says: "To entitle a complainant to protection against a false representation, it is not essential the article should be inferior in quality, or that the individual should fraudulently represent it, so as to impose upon the public; but if, by representation, it be so assimilated as to be taken in the market for an established manufacture or compound of another, the injured person is entitled to an injunction." Ib. 260; see, also, Browne on Trade Marks, 2d Ed., 386; Am. & Eng. Ency. of Law, Vol. 26, p. 444, and cases cited.

There is no question of imitation in the present case, because the marks or brands on the bags used by appellants for the delivery to their customers of flour manufactured by them, were the very marks or brands of appellee, and were placed on the bags by appellee.

To entitle a complainant to relief by injunction in a case like the present, it is not necessary to show that the public are or have been actually deceived.    The remedy by injunction is preventive, and it is sufficient to show facts from

which the court can deduce the conclusion that the complainant has reasonable ground to fear that the public and the complainant's customers may be deceived, to the injury of the complainant; that the use made by the defendant of the complainant's marks is calculated to deceive, and probably will deceive, the public, to the injury of the complainant. It is obvious that after appellants delivered flour to their customers, the bakers, in bags marked and branded as before stated, appellants could not, in all cases, follow the bags, nor could they control the bakers in the disposition of their flour, nor could they have personal knowledge as to how the bakers disposed of it, or as to whether or not they sold it, or any of it, or exposed it for sale in the bags in which it was delivered to them; or represented to their, the bakers', customers, that bread sold by them was made of flour of the brands marked on the bags, showing the bags. By delivering to the bakers their flour in bags marked as stated, they put it in the power of the bakers to dispose of the flour as that of appellee. See Coats v. Holbrook, 2 Sandf. Ch. 587.

The appellants, in their answer, aver that bakers were their principal customers, indicating that they had other customers, but nowhere in their answer do they aver that the bakers were the only customers to whom they delivered flour in bags marked with appellee's marks or brands. Appellants also say in their answer that the only pecuniary advantage to them of using bags with appellee's trademarks or brands on them, is that they can sell their flour at a lower price than they could if they should furnish new bags, and it is obvious that this is the only pecuniary benefit which could legitimately accrue to them from the use of the bags. But they can have the same benefit or advantage if, before using the bags, they simply obliterate the trademarks of the appellee.

It is urged by counsel for appellants that the injunction order is too broad, in that it enjoins the appellants not only from using the second-hand bags of the appellee bearing the marks or brands of the appellee, but from at all using

the second-hand bags of appellee. The part of the order in respect to which the objection is made is as follows: "The defendants and each of them are hereby enjoined and restrained from using the second-hand bags of the complainant, or the second-hand bags bearing the marks or brands of the complainant, in which to sell or deliver any flour other than that manufactured by complainant," etc.

Grammatically construed, the order is too broad, and had appellants' counsel applied to the lower court for a modification of the order, we have no doubt that the court would have modified it. Appellants had the right to use bags which appellee had disposed of in the market, for the delivery of flour manufactured by appellants, or for any other lawful purpose, after obliterating appellee's marks or brands thereon.

The injunction order should read: "The defendants and each of them be and they are hereby enjoined and restrained from using the second-hand bags bearing the mark or brands of the complainant," and that part of the order enjoining appellants from using "the second-hand bags of the complainant" should be omitted; and the court is directed to modify the order accordingly.

The order, with the exception stated, is affirmed, neither party to recover costs.

Judge Sears, having heard the cause below, took no part in the decision here.