THE EDISON STORAGE BATTERY COMPANY and
THOMAS A. EDISON

v.

THE EDISON AUTOMOBILE COMPANY OF WASHINGTON, D. C.,
et al.

[Submitted and decided December 24th, 1903. Filed July 9th, 1904.]

1. A bill by an inventor and a corporation using his surname to enjoin its use by a defendant corporation alleged that its use had been enjoined by a foreign court in a suit brought by the inventor's son, and it was claimed that the failure to allege that the injunction was dissolved was a suppression and want of frankness in the case.—*Held*, that it was no objection to the bill, since the fact alleged was intended, apparently, only to show that the son, so far as practicable, had revoked his authority to use the name, and his father was not a party to the former suit, and, besides, the present suit did not call for *interim* restraint, to which the rule of frankness peculiarly applies.

2. The fact that affidavits in opposition to an injunction against the use of a corporate name in violation of complainant's rights show that the defendant corporation had no intention of manufacturing anything manufactured by complainants, is immaterial, where defendant's charter empowers it to do so.

3. It is no objection to injunction against the use of a corporate name that it does not appear that any wrong has been done, or that there is danger thereof to complainant's injury, as in such a case complainant must act promptly, before the rights of innocent stockholders in the defendant corporation may become involved.

4. A corporation incorporated to conduct a business apparently in competition with that of an inventor and a corporation already using his name, incorporated his surname in its own, basing its rights to use the same on an alleged grant from his son, but it was apparent that it sought the use thereof on account of the great prestige attached thereto, and not on account of any connection with the son or prestige connected with his name.—*Held*, that the son had no right to make such grant.

5. Injunction is a proper remedy to prevent a corporation from including in its name the surname of an inventor already adopted and used by another corporation with his consent.

6. Where a suit for injunction against the use of a name by a corporation is heard on an order to show cause on the bill, affidavits and exhibits, relief should not await the final hearing where it appears from the defendants' affidavits and admitted facts in the case that it is highly improbable, if not impossible, that defendants will finally succeed.

Heard on order to show cause upon bill and affidavits and upon exhibits and affidavits on the part of the defendants.

*Mr. Robert H. McCarter,* attorney-general, for the complainants.

*Mr. Norman Grey,* for the defendants.

PITNEY, V. C.

The object of this bill is to prevent the defendant corporation, the Edison Automobile Company of Washington, D. C., from continuing to use the word "Edison" either in its corporate name or otherwise in the conduct of its business, and from holding out to the world that the complainant, Thomas A. Edison, is the inventor of any automobiles manufactured or sold by said corporation, or that the complainant, the Edison

Storage Battery Company, is the manufacturer of automobiles, or any part thereof, manufactured or sold by it, the defendant.

The facts, most of which are undisputed, are as follows:

At and prior to about the 1st day of October of the present year, 1903, the complainant, Thomas A. Edison, had been for many years and was a well-known inventor with a world-wide reputation, and among other things had invented a great number of instruments and machines, designed for and connected with the use of electricity. Among other things he had invented what he claims to be a superior kind of storage battery for the storage of electricity for use in automobiles, and had assigned the same to complainant, the Edison Storage Battery Company, which was one of his numerous companies organized by him for the purpose of manufacturing and dealing in his various inventions, and, at the time before mentioned, the Edison Storage Battery Company was engaged in the manufacture of storage batteries under Edison's patent, and was selling them in the open market, and also selling them in connection with automobiles, and was also selling automobiles equipped with such batteries. At that time two gentlemen by the name of Joslin, father and son, were engaged in the business of dealing in automobiles in the city of Washington, D. C., under a corporation, organized under the laws of New Jersey, with the name "The Automobile Company of Washington, D. C." At the same time complainant, Thomas A. Edison, had established his son, William Leslie Edison, in business in the city of Washington, D. C., under the name of the Edison Automobile Station. The establishments of the Joslins, carried on under the name of the Washington Automobile Company, and that of young Mr. Edison, under the name of the Edison Automobile Station, were rivals in business; the latter selling automobiles propelled by electricity stored in the Edison storage batteries.

About the 1st of October the Joslins approached young Mr. Edison with a view of consolidating their several establishments and changing the name of their own company to the

name of "The Edison Automobile Company of Washington, D. C."

Young Mr. Edison and the elder Mr. Joslin have made affidavits on this subject, which affidavits are not entirely in accord.

Young Edison swears that the object of the interview was to have the help and co-operation of young Edison in forming and incorporating under the laws of New Jersey a company with the name of "The Edison Automobile Company of Washington, D. C.," having for its object the conducting of an automobile storage and repair business in Washington and elsewhere in the United States, and that the principal object of Joslin was, as he stated, to get young Edison's consent to the use and insertion of the word "Edison" in the name of the proposed corporation; and he swears that he stated to Mr. Joslin that he could not enter into any agreement for the formation of any corporation or copartnership or other business arrangement in which the name of Edison was to be used without obtaining the full consent of his father. He stated, so he swears, that the use of his father's name was valuable, and that under an arrangement existing between him and his father he could not and would not permit the use of the name as proposed unless his father expressly consented thereto. Joslin thereupon said that he would call upon the elder Edison and ask his consent. That subsequently Joslin stated to young Edison that he had seen the elder Edison at his residence in Llewellyn Park, in Essex county, New Jersey, and had obtained his consent to the proposal; the language being, so young Edison swears,

"Yes, I have been to see your father and I had a very pleasant conversation with him, lasting about an hour, or an hour and a half, and your father seemed very much pleased at the prospect of your bettering yourself, and he has given his full consent for you to connect yourself with the corporation I propose to form, provided you keep the business you are now engaged in intact."

That he construed the language of Joslin to be that his father had consented to the use of his name, and thereupon he entered into a written agreement with Joslin, a copy of which is annexed

to his affidavit, and is not disputed, to the effect that the name of the Automobile Company of Washington (Joslin's company) was to be changed to "The Edison Automobile Company of Washington," the capitalization to be $100,000. The writing provides for the disposition of the stock and also contains an agreement to cancel an amount of $6,256.75 due to Joslin by his company, and that young Edison was to be the president and manager with a moderate salary, but a large majority of the stock was to be under the control of Joslin.

Acting upon that contract, Joslin immediately employed a corporation company in Camden to organize the proposed corporation, and it was so organized with three persons named as directors, who, it appears now, had no interest whatever in it, except one W. B. Walcott, as to $1,000, and the control of the whole affair was turned over to the Joslins.

The purposes of this corporation, as set forth in its certificate, are very broad, viz., to manufacture, buy, sell, deal in and deal with and operate automobiles, &c.; to manufacture, buy, sell, construct, deal in and deal with *engines, machinery, apparatus, tools, equipments* and all things in connection therewith, necessary, convenient and useful in manufacturing, buying, selling and dealing in and with automobiles and motor vehicles; to *manufacture, purchase, own, lease, &c., sell and dispose of, and deal in and with machines, compressers, generators, storage batteries, pumps, &c., for the manufacture, production, generation, distribution, use, supply and application of electricity, compressed air, oil, gas or other motive power, &c.*

As soon as Mr. Thomas A. Edison heard of this organization, that is on the 12th of October, he caused a letter to be written to that one of the organizers who was stated in the certificate to be the holder of almost all the stock, forbidding him to use the name of Edison, and he received a reply, saying that they were not using the name of Thomas A. Edison; that the name used was that of W. Leslie Edison, and that it was so used at his direction.

Shortly afterwards, to wit, on the 16th of October, young Edison filed a bill in the equity side of one of the courts of the District of Columbia against the Edison Automobile Company

of Washington and the two Joslins, asking that they be restrained from the further use of the name "Edison" and offering to return to the company, or to the Joslins, certain shares of stock in that company which were issued to him.

On the filing of that bill an *interim* restraint was granted, which was afterwards discharged upon the application of the defendants and upon an answer and affidavits made by them and filed, the grounds upon which the judge discharged it being that the bill was based upon the value of the name "Edison" generally, and the complainant, William L. Edison, could not complain of that, and that Thomas A. Edison was not a party to the suit.

Thereupon the bill herein was filed on the 2d of November and an order to show cause granted thereon.

The affidavit of Mr. Joslin, as I.have said, disagrees somewhat with that of young Mr. Edison. Joslin says that at the interview between him and young Edison the proposition was that the separate business of each should be combined, and that it was not for the purpose of getting Leslie Edison to consent to the use of the name "Edison" but was for the purpose of getting Leslie Edison to act as manager and president of the combined business; that he did not inform Leslie Edison that his principal object was to get his consent to the insertion of the name "Edison" in the proposed corporation. (This statement, that the principal object was to get Mr. Edison to combine the business of the two establishments, namely, that of Edison and that of Joslin, and that Edison should be the manager and president of the combined business is important.)

Joslin further swears that young Edison did not, at that time, or at any other time, state to deponent that he could not enter into any agreement for the formation of any copartnership or other business in which the name of Edison was to be used without obtaining first the full consent of his father, &c., and denies that young Edison said anything about his inability to use the name of Edison in any business; but Joslin swears that Edison told him that he could not combine his business, known as the Edison Automobile Station, with any business without

the consent of his father, and that he did not believe that his father would consent to such combination, as his father had established the Edison Automobile Station for him (Leslie Edison), and that he suggested that he (Joslin) should see his father (Thomas); that, acting on the suggestion of Leslie Edison, he (Joslin) did see Thomas A. Edison with reference to the combination of the business, but that Thomas A. Edison would not give his consent to such combination, stating that he had established the Edison Automobile Station for his son Leslie and wished to see what success he would have in operating the same—did not wish it combined with any other business. And he says he (Joslin) said nothing to Thomas A. Edison with reference to the use of the name "Edison" by the proposed corporation or any corporation. (This is also an important circumstance.)

He further swears that after the interview with Thomas A. Edison he (Joslin) had another interview with Leslie Edison, and that at the last interview he did not inform Leslie Edison that his father (Thomas) had given his consent for Leslie to connect himself with the proposed corporation or any corporation, provided he kept the business, known as the Edison Automobile Station, intact; but at that interview he informed Leslie Edison that his father was not willing that Leslie should combine the business with that of the Automobile Company of Washington, as the father wished to see what success Leslie would have in that business. That after that conversation the contract set out in Leslie Edison's affidavit was entered into (which, as we have seen, was a contract not for the formation of the new corporation but for changing the name of the old corporation). The affidavit of Mr. Joslin further proceeds to state that instead of changing the name of the Automobile Company of Washington to the Edison Automobile Company of Washington, he (Joslin) caused the defendant company, the Edison Automobile Company of Washington, D. C., to be incorporated with a capital stock of $100,000. Joslin's affidavit then goes on to state that immediately afterwards a meeting of the directors was held and that Leslie Edison and W. B. Walcott, a majority of the directors of the corporation, were

present, and that resolutions were passed by which the Edison Automobile Company bought the business of the old automobile company of Washington for $79,000 in stock in the new company; that Leslie Edison was elected president and general manager and Walcott was elected secretary and treasurer of the company, and that the minutes were written up and agreed to by young Edison, and that the whole of the $79,000 of stock was issued to Joslin and he transferred $20,000 of it to young Edison.

He further states that it is not the intention of the Edison Automobile Company to manufacture anything, but only to sell and deal in automobiles.

How young Edison came to be a director does not appear, for the original certificate of organization, a copy of which is annexed to the bill, shows that Edward H. Chew, Wilfred B. Walcott and Mr. G. of Camden were the original incorporators and directors and that Mr. G. subscribed for all the stock except two shares.

Now, it is to be observed that according to Joslin's story the original purpose of the deal between the Joslins and young Edison was that the two separate businesses carried on by the Joslins and young Edison severally in the city of Washington should be combined; but when the Joslins found that the father, who probably owned the young man's business in Washington, would not consent to that, they were perfectly content to have young Edison as president and manager of their old business when transferred to the new corporation, and leave him at liberty, at the same time, to preserve and maintain and manage his own original business.

At the same time, the complete control of the new corporation remained in the Joslins, and they, having installed the name "Edison" in their corporation, could vote him out and deprive him of all voice in the company at the very next meeting of the directors.

According to Joslin's account, no mention was made by him to the elder Edison of any intention to use the word "Edison"— nor, indeed, to the younger man—until the contract (which was

in the form of a letter addressed by Joslin to him) was presented to him for signature.

Now, under all these facts, and others that appear in the affidavits, it is quite palpable that the whole object of the manœuvre on the part of the Joslins was to get the name of Edison in their corporation, and they now, by their counsel, claim the right to use that name by virtue of the consent of young Edison.

Under these facts it is simply incredible, and approaches the absurd, to suppose that those gentlemen were anxious to get the name of William L. Edison in their business for the sake of his business capacity and influence. Of the latter, palpably, he had little or none. Palpably, it was the name of Edison, and the value attached to it by reason of the world-wide reputation of the elder Edison, that they were seeking. And the question is whether they can succeed.

I ought to say, before considering that question, that criticism was made by counsel for the defendants upon the circumstance that the complainants did not set out in their bill the fact that the injunction granted by the Washington judge had been already dissolved, and he argues that there was suppression and want of frankness in the case put forward by complainants. I do not understand that the complainant had any other object in inserting in his bill the fact that his son had brought the suit in the District of Columbia except to show that he had, as far as practicable for him so to do, revoked his authority to the Joslins for the use of the name "Edison" in incorporating their company. As was well said by the judge in Washington, in his opinion, Thomas A. Edison was no party to that suit; he could derive no benefit from it and he could receive no harm from it.

The complainants' case does not rest upon and is not affected one way or another by the result of the Washington suit. Moreover, it must be observed that the rule of frankness which the defendants' counsel invokes is one which applies peculiarly to a case where the complainant, upon *ex parte* affidavits, procures an injunction or *interim* restraint without notice to the defendant. No *interim* restraint was granted herein, nor, indeed, was

it asked for, before notice to the defendants. The defendants have had full opportunity to come in and state their case and supply any omissions in the original presentation thereof by complainants. The matter omitted was not something within the personal knowledge of the complainants, but a public record.

I spend so much time on this point because I do not wish even to appear to undervalue the importance of the rule invoked by counsel.

Then, further, it is said that the affidavits show that the defendant corporation had no intention of manufacturing any storage batteries, or anything else manufactured by the complainant corporation. But the complete answer to that is that they have the power, by their charter, so to do, and if they are permitted to proceed with their corporation under its present name they will have the prestige of the elder Mr. Edison's name for all they do and all that they sell.

The only question in the case is whether, having induced the young man to enter into the contract in question, they can make use of that circumstance to use, in effect, the father's name.

It is further urged that complainant should not file his bill or obtain any restraint because it does not yet appear that any wrong has been done, or that there is danger that it will be done in the near future, to the injury of the complainant. But the complete answer to this is that in order to protect his rights to the use of his name the complainant must act promptly and before the rights of any innocent third parties who may have purchased stock in the defendants' corporation may become involved.

In this particular class of cases, involving the right to use a name, prompt action is always required.

The defendants place themselves on their right to use the name "Edison" under the grant of the son, but under the circumstances of this particular case I think it sufficiently clear, under the authorities, that he (the son) did not have the right to make such grant.

It is impossible to imagine that the defendants were not fully aware of such lack of right, both in fact and in law. Joslin knew

that the father had set up the son in business in Washington, and that he was unwilling that he should consolidate that business with any other business. That, I think, implied that he should not use the name "Edison."

Then the young man swears that he so told Joslin. This, indeed, is denied by Joslin, but the probabilities are all in favor of its truth.

Then, as before remarked, it approaches the absurd to suppose that the Joslins wished to use the name "Edison" on account of any connection with the son or of prestige connected with the name of William Leslie Edison. They were, as I have said, seeking the use of the name "Edison" on account of the great prestige attaching to the father's name with regard to all matters involving the use of electricity.

It is common knowledge that automobiles especially, and even street cars, are driven by electricity stored and accumulated in what are known as storage batteries. Hence the selling of automobiles, driven by electricity, by a company having the word "Edison" as a part of its name, would be an assurance of more or less strength that the batteries so used were made by the elder Mr. Edison, or under his patents.

Now as to the law applicable to these facts.

The deliberate adoption by one corporation of a name, already adopted and used by another corporation, or incorporating in its name the name of an individual, seems to me to stand on a weaker ground of right than the imitation of a mere trade mark. It seems to me to be a more serious infringement of private rights.

In England, one quite efficient remedy for this wrong is to move the officer who by law controls the registration of corporations by certificate to change the name. A provision for that remedy is not usually found in the statutes of the several states of the union providing for the formation of corporations.

In our statute of 1896 is found this clause, under the head "The Name of the Corporation:" "No name shall be assumed already in use by another existing corporation of this state, or so nearly similar thereto as to lead to uncertainty or confusion."

Then there is a provision in section 27 for a change in the name, but I know of no provision for compelling a change by any direct application therefor by other parties. But the power of this court to enjoin the use of a name is beyond all dispute. It was exercised in this state in the case, heard before me *ex parte,* of *Glucose Sugar Refining Co.* v. *American Glucose Sugar Refining Co., 22 N. J. L. J. 147 (1899).* And the right was asserted very distinctly in the case of *Stirling Silk Manufacturing Co.* v. *Stirling Silk Co.,* heard by Vice-Chancellor Emery, and reported in *59 N. J. Eq. (14 Dick.) 394.* There the case for preliminary injunction rested mainly on the question of trade mark, and the injunction was refused. The learned vice-chancellor's views on the similarity of names are found on *p. 396 et seq.*

Other cases selected from numerous instructive authorities cited by counsel for complainants herein are *Massam* v. *Thorley Cattle Food Co., L. R. 14 Ch. Div. 748 (1880)* ; *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manufacturing Co., 37 Conn. 278 (1870)* (where will be found an exhaustive collection of the authorities up to that date) ; *Celluloid Manufacturing Co.* v. *Cellonite Manufacturing Co., 32 Fed. Rep. 94 (1887), per Bradley, J.; Rogers Manufacturing Co.* v. *Rogers & Spurr Manufacturing Co., 11 Fed. Rep. 495, per Lowell, Circuit Judge.*

One of the headnotes to that case is significant: "Anyone has a right to use his own name in business, but he may be restrained from its use if he uses it in such a way as to appropriate the good will of a business already established by others of that name. [This is the important thing.] *Nor can he by the use of his own name appropriate the reputation of another by fraud, either constructive or actual."*

I think that language peculiarly applicable here.

Another case is *Le Page Co.* v. *Russia Cement Co., 51 Fed. Rep. 942,* in the circuit court of appeals, in 1892, before Judges Gray, Colt and Putnam.

That was a writ of error to the circuit court on a judgment rendered on a verdict. The right of the plaintiff to recover was established unanimously, but the judgment was reversed on ac-

count of the admission of improper evidence in the matter of damages.

Another valuable case is that of *Clark Thread Co.* v. *Armilage, 67 Fed. Rep. 896; S. C. on appeal, 74 Fed. Rep. 936.* There the defendant established in Rhode Island a thread manufacturing company under the corporate name of the William Clark Company, by authority of a Mr. William Clark, who was formerly connected with the old and great and well-established Clark Thread Company, of Newark, and the court declared, in explicit language, that but for the consent given by William Clark number one, the principal officer and manager of the old company, the defendant would have been enjoined in the use of their name.

An instructive case, also, is *Massam* v. *Thorley Cattle Food Co., supra.* There one Thorley had bought a receipt for a particular kind of food for cattle and had made it for many years and had acquired therefor a great reputation. After his death, his executors and trustees under his will carried on the business. Subsequently some persons fell in with a younger brother of the deceased and induced him, in substance, to lend them his name in the manufacture of the same article—"Thorley's Food for Cattle"—the secret of which he had learned many years previously while working for his brother. The defendants organized under the name of the Thorley Cattle Food Company, and the surviving brother signed the memorandum for one share of one shilling. The English court of appeal (1880) held that the whole transaction was a transparent fraud and granted an injunction.

Another instructive case is *Armington* v. *Palmer,* in the supreme court of Rhode Island, and reported in *42 Atl. Rep. 308.*

These and many other cases hold that there is no sanctity in the name being used by a corporation either directly created by special charter or organized under general laws. If organized under a special charter, it is usually chosen by the petitioners therefor. If organized under a general law, it is chosen by the organizers. In either case they adopt it at their peril.

The only question that remains is whether an injunction

should be granted at this time as to the use of the name or whether that remedy should await final hearing.

The affidavits put in by the defendants, in connection with the admitted facts in the case, satisfy me that it is highly improbable, if not quite impossible, that the defendants will succeed at the final hearing.

The cost and trouble of changing their name, by eliminating the word "Edison," will be slight, and if on final hearing they shall succeed in establishing their right thereto, the cost of restoring it will be equally slight.

I will advise a decree to that effect.