**PURCELL et al. v. SUMMERS et al.**

C/A 328.

District Court, E. D. South Carolina, Columbia Division.

Feb. 29, 1944.

Walter McElreath, of Atlanta, Ga., J. Morgan Stevens, of Jackson, Miss., Henry R. Sims, of Orangeburg, S. C., R. T. Jaynes, of Walhalla, S. C., and R. E. Babb, of Laurens, S. C., for plaintiffs.

Collins Denny, Jr., of Richmond, Va., and Clint T. Graydon, of Columbia, S. C., for defendants.

TIMMERMAN, District Judge.

This action was commenced June 1, 1940. Thereafter my predecessor entered an order dismissing the complaint for reasons then appearing to him sufficient. 34 F. Supp. 421. An appeal was taken upon said order to the Circuit Court of Appeals for the Fourth Circuit. On March 9, 1942, the Circuit Court of Appeals handed down an opinion reversing the order of dismissal and remanding the case to this court for further proceedings not inconsistent with the appellate court's opinion. Purcell et al. v. Summers et al., 4 Cir., 126 F.2d 390.

This cause is now before the court for decision on what remains of the controversy after certain concessions were made on the part of the defendants following the filing of the opinion of the South Carolina Supreme Court in the case of Turbeville et al. v. Morris et al., 203 S.C. 287, 26 S.E. 2d 821, wherein questions quite similar to the ones here involved were considered.

The plaintiffs pray:

"(1) For a declaratory judgment finding that the union of the Methodist Episcopal Church, the Methodist Episcopal Church, South, and the Methodist Protestant Church was legal and valid, and that The Methodist Church is the legal successor to all of the properties and rights formerly held by the Methodist Episcopal Church, South, including the sole and exclusive right to use the name 'Methodist Episcopal Church, South.'

"(2) That a permanent * * * injunction * * *, may be issued restraining and enjoining the defendants, their associates, agents, and all those confederating with them from using the name 'Methodist Episcopal Church, South', or any name similar to that name, or any contraction of that name, or any synonym thereof, as the name of any church, religious society, or other organization existing, or which may be organized or exist independent of The Methodist Church.

"(3) That a permanent, * * * injunction, * * * may be issued restraining and enjoining the defendants, their associates and all those joining or confederating with them, from using the name or appellation 'Southern Methodist

Church' as the name of any church, religious society or organization organized or existing, or which may be organized or exist independently of The Methodist Church."

Following the language quoted there are prayers for costs and for "such other and further relief as in equity may be just."

In recognition of the binding force of the decision in Turbeville, et al. v. Morris et al., supra, the defendants, by leave of the court, filed an amended answer in which, among other things, it was said, "The Supreme Court of South Carolina having laid down the rules of decision heretofore set forth, it is not denied that the three constituent churches have united into the new The Methodist Church, and that The Methodist Church has succeeded to the property, if any, of the three constituent churches."

It follows, therefore, that the first prayer of the complaint will be granted to the extent that it will be adjudged "that the union of the Methodist Episcopal Church, the Methodist Episcopal Church, South, and the Methodist Protestant Church", under the new name and style of The Methodist Church, was and is legal and valid, and that said new church is the legal successor to all property and property rights held by the Methodist Episcopal Church, South, at the time of said union, whatever they may have been.

The prime question that remains for settlement is:

Shall the defendants, and all who may be associated with them, be enjoined from using the name "Methodist Episcopal Church, South," or the name "Southern Methodist Church", or any contraction or synonym of either of said names, as the name of their religious association?

As a prelude to a discussion of the question posed it may be stated factually that the plaintiffs are Bishops of "The Methodist Church", a voluntary Christian association, suing of right on behalf of themselves and other members of their church.

The defendants are officers and/or members of the complained of "South Carolina Conference of the Methodist Episcopal Church, South", also a voluntary Christian association, and they are representative of other members of said association.

That, prior to the creation of The Methodist Church at the meeting of the uniting conference in the spring of 1939, members of the Methodist Episcopal Church, South, who were opposed to the merger of said three churches, organized a voluntary association known as the "Laymen's Association for the Preservation of The Southern Methodist Church", through which they opposed the merger and have since acted to preserve the name of their original church; and, in furtherance of its purposes, said association has published a paper known as "The Southern Methodist Layman".

That on the call of said association, some of those members of the Methodist Episcopal Church, South, in South Carolina, who had declined to join in the union or to become members of The Methodist Church, met in Columbia, South Carolina, in January of 1940, and organized the "South Carolina Conference of the Methodist Episcopal Church, South", adopted a provisional plan for the preservation unto themselves of the Christian faith of their fathers, and to that end adopted and retained the name to which they had been accustomed and were attached—"Methodist Episcopal Church, South". That conference has met annually since that time, and has attended to the business of their conference, the churches thereof and the people associated therewith. That in November, 1943, there was organized by residents of states other than South Carolina, in Memphis, Tennessee, the Mid-South Conference of the Methodist Episcopal Church, South, which adopted the South Carolina provisional plan.

That the plan of union, as submitted to the three constituent churches for adoption, included no provision concerning the future use of the name "Methodist Episcopal Church, South", or the name "Southern Methodist Church"; nor does it appear that the Methodist Episcopal Church, South, before the union, took any action concerning the future use of either of said names.

It having been conceded by the defendants that they have no right and are making no claim to any of the properties held by the Methodist Episcopal Church, South, or by any of its agencies, at the time of the union, or to any of the properties of the united church acquired since the effective date of the union, there is no factual basis for the claim that the use of either of said names by the defendants as a designation of their particular religious faith will constitute a cloud on the title to properties of

The Methodist Church, or create confusion thereabout.

Furthermore, there is nothing in the entire record which I have discovered that would warrant the inference that the defendants are using either of the names in question as a means of deception, or that they are by misrepresentations adversely affecting any vested religious or property rights of the plaintiffs, unless it can be said that the plaintiffs are adversely affected by the refusal of the defendants to acknowledge allegiance to plaintiffs' church. Such an adverse effect would flow from the refusal of any other body of Christians to acknowledge a like allegiance.

There is no contention that the defendants are holding themselves out as members or representatives of The Methodist Church; and the mere fact that they as professing Christians desire to preserve the name of their original faith—a name that the plaintiffs have abandoned—does not warrant that inference.

Counsel for the plaintiffs pointed out that the uniting conference passed a resolution in these words:

"The Methodist Episcopal Church, the Methodist Episcopal Church, South, and the Methodist Protestant Church, in adopting the name 'The Methodist Church' for the united church, do not and will not surrender any right, interest or title in and to these respective names which, by long and honored use and association, have become dear to the ministry and membership of the three uniting churches and have become enshrined in their history and records."

■ But, as it is said in Turbeville et al. v. Morris et al., supra, "this action was beyond the powers of the uniting conference and was void. * * * The plan of union made no reference to the subsequent use of the name Methodist Episcopal Church, South. No conference of the Southern Methodist Church took any action in that regard. The uniting conference was not authorized to make any such declaration as was made for the first time at the Kansas City meeting. No grant of power to it even remotely contemplated any such action as this declaration. The uniting conference was powerless to take any action concerning names. Its powers were clearly set out and limited in the plan of union, which merely stated that the united church should have the name The Methodist Church. In fact, the declaration

does not purport to be the act of the uniting conference, but is framed in the language of a declaration of each of the three constituent churches."

■ Upon the established facts in this case, I am constrained to hold, as a matter of law, that the injunctive relief prayed for should not be granted; and I now state some of the reasons moving me to that conclusion.

I agree with the concurrent findings of the Special Referee, Circuit Judge and Supreme Court in the case of Turbeville et al. v. Morris et al., supra, "that the unified church has abandoned the name Methodist Episcopal Church, South". While it is true that an established voluntary association has the right in a proper case to protect its name by seeking injunctive relief against others who would use it to its detriment, but as the record shows in this case the former possessor and rightful user of the name Methodist Episcopal Church, South, formally and solemnly, after years of consideration, abandoned that name and selected another by which it is to be ever hereafter known.

The Court in Parkins v. Dunham 3 Strob., S.C., 224, had under consideration the question of whether a party to the action had abandoned an easement. The Court said in effect that abandonment was largely a question of intention to be determined by the facts of the case. It is fundamental that a party's intention may be determined as well, if not better, by what he does as by what he says. In this case I have judged the intention of the Methodist Episcopal Church, South, as formerly constituted, both by what it did and by what it said. Its membership seriously considered and debated for some time a plan of union with two other religious associations, which plan contemplated the dropping of the old names of the uniting organizations and the acceptance of a new name. That plan of union was agreed to, the new name was adopted, and by that new name the united association has been known ever since.

The plaintiffs in this case style themselves, individually, "as Members of *The Methodist Church*" and, officially, "as Bishops of *Said Church* representing themselves and all other members of *Said Church* as a class". (Italics supplied.)

In Taylor v. Hampton, 4 McCord, S.C., 96, 17 Am.Dec. 710, it was held that one could abandon a right by securing "to him-

self some other thing inconsistent with the enjoyment of the former" right.

The unified church exercised its right to select its name. It agreed on "The Methodist Church" as its name, and it cannot now disregard the name of its own choice and return to the name Methodist Episcopal Church, South, without going through the same procedures and formalities it went through in the first instance to abandon that name and adopt the name by which it is now known. The decision last mentioned, as respects the matter of abandonment, emphasizes the importance to be attached to the acts and conduct of the party holding to the right claimed to have been abandoned, using these words:

"In Domat 218, it is said, 'if between two houses, one of which cannot be raised so high as to prejudice the prospect of the other there stands a third house, which not being liable to the same service has been raised and does obstruct the said prospect, the proprietor of the house who owes the service may raise his.' The reason is, because the privilege has become useless and cannot be enjoyed. But if the intervening house chance to be removed the service is recovered. But suppose he who claims the service should put up the intervening house himself, will it then be pretended that he can revive the service by pulling it down. I presume not. Because the obstacle raised by himself was of as permanent a nature as the estate to which the service was due. And in that case even the accidental falling of the house, much less the pulling of it down, by the party himself could not restore a right which he had voluntarily relinquished."

Moreover, the plaintiffs have not established an exclusive right to either of the names which they would bar the defendants from using, much less an exclusive right to any contraction or synonym of either of said names. As stated by the State Supreme Court in Turbeville et al. v. Morris et al., supra, "The fact that the word Methodist appears in both names would not necessarily cause confusion, since the word Methodist, or Episcopal, or Protestant appear in very many names of religious associations. The evidence shows that there are sixteen or seventeen organizations using the word Methodist in their official names."

Passing outside of the record, it may be observed that the statement of the State Supreme Court is historically correct. The names of the uniting churches are forceful illustrations of the truth of this statement.

Here it is proper to say that, before union, the defendants had as much right, morally and legally, as did the plaintiffs and those for whom they speak to use either of the names in question, or any synonym or contraction of either. By the act of union the majority abandoned the old name and accepted the new. Could the majority by so doing, preclude the constitutional right of the minority to continue to worship God according to the dictates of the consciences of those constituting the minority, even if the exercise of that constitutional right involved the use of the name to which they and their forefathers had been accustomed? I do not think so. The right of the minority to continue to worship God in manner and form as they had always done is, in my opinion, guaranteed by the First Amendment to the Federal Constitution and by Section 4 of Article 1 of the Constitution of the State of South Carolina, both of which constitutional provisions use the same phraseology to extend the guaranty of freedom in matters pertaining to the worship of God.

An order for judgment will be signed upon presentation to carry into effect the views hereinabove stated.

Each side should pay its own costs.