GENERAL INDUSTRIES CO. v. 20 WACKER DRIVE BLDG. CORPORATION et al.

No. 8777.

Circuit Court of Appeals, Seventh Circuit.

July 16, 1946.

Rehearing Denied Aug. 10, 1946.

LINDLEY, District Judge, dissenting in part.

Robert E. Barrett, John Costello, and Wendell H. Shanner, all of Chicago, Ill., for appellants.

Ralph M. Snyder, of Chicago, Ill., and King Fauver, of Elyria, Ohio, for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The defendants appealed from a judgment in favor of the plaintiff which enjoined them from adopting and using the name General Industries Corporation.

The plaintiff, incorporated in Ohio in 1914, first adopted the name, The General Industries Company, in 1925. During World War II it manufactured largely military equipment. Before the war it had made and sold plastic parts, spring motors, electric motors, phonograph record changers, sound recording units, typewriters, heat regulators, road markers, automobile horns, movie projectors, massage machines, plumbing supplies, telephone switchboards, and other devices. At the present time, it operates a plastic division and a mechanical division. It is licensed to transact business only in the State of Ohio but sells generally all over the country, maintaining one of its soliciting offices under its own name in Chicago. It accepts transmitted orders at its home office in Ohio and then ships the goods to various States.

The trial court found that the plaintiff's products have been long and favorably known, but there was no finding that they were known by its corporate name. The court further found that plaintiff advertises extensively in trade papers, where its name is actively featured; that its annual business by 1943 exceeded $10,000,000 in volume; and that by fair dealing, integrity, prompt deliveries, and excellence of its product, plaintiff has during twenty years built up a valuable good will in its corporate and trade name.

The defendant General Finance Corporation was previously engaged only in the general finance business. When the war interrupted its ordinary operations, it purchased several subsidiary manufacturing corporations. It also controls a building corporation which owns the Civic Opera Building in Chicago. All three defendants, 20 Wacker Drive Building Corporation, LaSalle Industrial Finance Corporation, and General Finance Corporation, proposed to merge in one corporation to be known as General Industries Corporation. When the plaintiff learned of this plan, it brought the present suit.

Upon the trial the court found the foregoing facts and additionally that a likelihood of confusion would arise from the defendants' use of a name practically identical with that of the plaintiff and that the nearly exact identity of the two names would be very confusing to any person dealing in the stock of either corporation and in identifying products produced or to be produced by the two companies.

The court concluded that the plaintiff is entitled to be protected from confusion arising from the practical identity of the names, from confusion as to identity of the corporations, and from probable damage to its credit or to its reputation for fair dealing and responsibility. There is no finding to support this latter conclusion. The court further concluded that the public is

likewise entitled to be protected from the effects of such confusion, and that under the laws of Illinois it is not necessary to establish direct competition but that it is sufficient to show that confusion in the trade and on the part of the public is likely to result and that the plaintiff has a property right in its nationally known corporate and trade name and is entitled to be protected against its appropriation by a later comer in the same general field. The court then enjoined the defendants from using or causing to be used the name General Industries Corporation or any name similar thereto.

Two questions are presented. First, may the plaintiff, a foreign corporation that has not received a license to do business in the State of Illinois, maintain this suit in a Federal court in Illinois? Second, if it has the right to maintain the suit, is the finding of fact that there is likelihood of confusion in the minds of the public sufficient to support an injunction?

As to the first question, we think it clear that the State of Illinois may deny to a foreign corporation the right to sue in its courts to enjoin a domestic corporation from using a name similar to that of the foreign corporation where such foreign corporation has not complied with the statute of Illinois which permits such corporation to do business in the State. Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 142 Ill. 494, 30 N.E. 339. Neither can a foreign corporation with a name "deceptively similar" to that of a domestic corporation in Illinois mandate the Secretary of State to admit such foreign corporation to do business under such "deceptively similar" name. Investors Syndicate v. Hughes, 378 Ill. 413, 38 N.E.2d 754. In that case the court held that the Secretary of State, who had found that the Investors Syndicate of America, the name of the plaintiff Minnesota corporation, was in the words of the statute "deceptively similar" to Investors Syndicate, the name of the existing Illinois corporation, had not abused his administrative discretion in refusing to license the Minnesota corporation in Illinois. This was a case where the legislature had acted to protect the public from confusion that might arise from the use of "deceptively similar" names. The standard was set by the legislature and the discretion was placed in the Secretary of State to apply that standard. It did not involve the law of unfair competition and the standards of confusion pertinent thereto where the suits are brought by private parties.

While these two cases seem to effectively foreclose the plaintiff from any remedy in the courts of Illinois, it does not follow that the Federal courts are also closed to the plaintiff. We think the plaintiff has a right to sue the defendants in the Federal courts on a cause in which the courts of Illinois may be closed to it. David Lupton's Sons Co. v. Automobile Club of America, 225 U.S. 489, 500, 32 S.Ct. 711, 56 L.Ed. 1177, Ann.Cas.1914A, 699; Metropolitan Life Insurance Co. v. Kane, 7 Cir., 117 F.2d 398, 133 A.L.R. 1163; Peck Bros. & Co. v. Peck Bros. Co., 7 Cir., 113 Fed. 291, 62 L.R.A. 81.

Having brought the suit in the Federal court because of a likelihood of confusion in names, the law of Illinois as to the right of the plaintiff to any equitable relief must control. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

We must now answer the second question: Is the finding of fact that there is likelihood of confusion in the minds of the public sufficient to support an injunction?

The plaintiff's name is composed of generic words incapable of exclusive appropriation by the plaintiff. They are words publici juris. There is no finding of fraud by the defendants in the proposed use of the similar name. The parties are not found to be or likely to be in competition with each other. There is no finding that the defendants now do business outside the State of Illinois or that they intend to do so in the future under the name General Industries Corporation. The court found that the plaintiff sells mostly to manufacturers, to a lesser extent to jobbers and dealers, and occasionally to individuals. There is no finding that the goods of the plaintiff are sold to or are known to the trade by the plaintiff's name. In other words, there is no finding of a secondary meaning attaching to the plaintiff's name in

relation to the sale of its products. We have the bare naked question of whether the plaintiff can enjoin the defendants from the use of a similar corporate name, the mere use of which is likely to lead to confusion. The authority in Illinois would seem to indicate that the plaintiff is not entitled to such equitable relief.

· The case of Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., supra, is attempted to be distinguished on the ground that the court there held that its courts were not open to a foreign corporation that had not complied with the Foreign Corporation Act of Illinois. This Act provided that a foreign corporation must be licensed to do business in Illinois before it is entitled to sue in the State courts to enjoin a domestic corporation of Illinois from using a similar corporate name. While the court did decide this point quite clearly, it went further and said:

"If any confusion has occurred, it has arisen from the similarity of the two corporate names, and not from any attempts on the part of the defendant to deceive. But, as we have already held, the similarity of names is a circumstance of which the complainant has no right to complain, the defendant having at least as good a right to the use of its corporate name in the transaction of its business as the complainant has to use its name. If injury results to the complainant from such cause, it is damnum absque injuria." 142 Ill. at page 509, 30 N.E. at page 345.

The case of Lady Esther, Ltd., v. Lady Esther Corset Shoppe, Inc., 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6, has been cited. In this case both corporations were using somewhat similar names in Illinois. They were not in competition nor was there any fraud or palming off found, but it did appear clearly that the plaintiff, who had made and sold cosmetics for over thirty years, had acquired a secondary meaning to its name. Its goods were sold to and identified by the trade as "Lady Esther cosmetics." This case cannot be controlling in the present situation where the plaintiff has acquired no secondary meaning to its name. The Lady Esther case did not turn upon the use of similar names alone. It

was a case of similar names plus a secondary meaning attaching to one of them.

The law as laid down in the Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., supra, from which we have heretofore quoted, is amply supported by the United States Supreme Court in Howe Scale Co. v. Wyckoff, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972. In that case the court stated the question as follows (198 U.S. at page 134, 25 S.Ct. at page 611):

"Referring to the Remington-Sholes Company, it was unanimously held by the Circuit Court of Appeals: 'We do not find in this voluminous record sufficient evidence that defendant has itself done anything to promote confusion in the minds of the public, except to use the name "Remington" on its machines and in its literature.' Accepting that conclusion, it follows that complainant's case must stand or fall on the possession of the exclusive right to the use of the name 'Remington.'"

After holding that the plaintiff had no exclusive right to the name Remington, the Supreme Court said at pages 137 and 140 of 198 U.S., at page 613 of 25 S.Ct.:

"The principle that one corporation is not entitled to restrain another from using in its corporate title a name to which others have a common right, is sustained by the discussion in Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144, and is, we think, necessarily applicable to all names publici juris. * * * Having the right to that use, courts will not interfere where the only confusion, if any, results from a similarity of the names, and not from the manner of the use * * *."

It is not the *use* of similar names that might lead to confusion, it is the *abuse* of such similar names injurious to the plaintiff that may be enjoined. Mere confusion of the public in the use of similar names that are publici juris cannot be enjoined by the plaintiff or by any other private individual. For a private party to succeed in a court of equity in enjoining the use of similar names because of confusion to the public, such party would have to show it had suffered some injury not suffered by the public generally. Mississippi &

478

Missouri R. Co. v. Ward, 2 Black 485, 67 U. S. 485, 492, 17 L.Ed. 311; Irwin v. Dixion, 9 How. 10, 50 U.S. 10, 27, 13 L.Ed. 25; The Mayor v. Alexandria Canal Co., 12 Pet. 91, 37 U.S. 91, 9 L.Ed. 1012. Public agencies protect the public interest. To entitle a private party to equitable relief, there must be wrong added to incidental confusion in the use of similar names, such as fraud, deception, or palming off, or the name which it has sought to protect must have acquired a secondary meaning. A court of equity will not enjoin the use of a similar name because of the incidental confusion in the use of that name. The plaintiff, a foreign corporation, may not succeed in the Federal courts in preventing the State of Illinois from giving to its domestic corporations such names as it pleases simply because the names are similar and there is a likelihood of confusion. The State of Illinois cannot close the Federal courts to the plaintiff, but the plaintiff may not succeed in the Federal courts on a complaint for unfair competition when the defendants have done only what they had a legal right to do, to wit, indicate their intention to use a name that was public property in Illinois.

The judgment is reversed, and the cause is remanded to the District Court with directions to proceed in accordance with this opinion.

LINDLEY, District Judge (dissenting in part).

I think that upon the second question, namely, whether in order to sustain a suit for injunction against the use of a similar corporate name, plaintiff must show in addition to probable confusion in the minds of people, fraud, "palming off" or other intentional acts of unfair competition, the present day rule is more liberal than that announced by my brethren.

In Investors Syndicate of America, Inc., et al. v. Hughes; 378 Ill. 413, 38 N.E.2d 754, 758, in interpreting a statute forbidding the Secretary of State to issue a certificate of authority to a foreign corporation which has a name "deceptively similar" to that of a corporation authorized to do business in the state, the court remarked: "While it is true that a majority of the adjudicated cases involving the use of a corporate name have arisen between hostile corporations, thus raising questions of unfair competition and property rights in the use of a corporate name, it is obvious both from a standpoint of public policy and from the construction of the statutes involved, that such a statute has the dual purpose of protecting competing corporations and likewise the public, from deception in the use of deceptively similar corporate names." It then proceeded to a discussion of the necessity of fraud or imposition. It commented that prayers for injunctive relief had in many cases been based upon the protection of property rights which would be injured but that at the present time "Even in injunction cases between competing corporations, the *trend of decision is to place less emphasis on competition and more on confusion* (italics mine) as is evidenced by the following cases: Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509, Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039. As was said in Ward Baking Co. v. Potter-Wrightington, 1 Cir., 298 F. 398, 403, 'The test should be whether the public is likely to be deceived.' * * * The use of the term 'deceptively similar' indicates that it was not the sole purpose of the act to protect the property rights of existing corporations, but also that the public be protected against any deception arising out of the use of similar names." After referring with approval to United States Ozone Co. v. United States Ozone Co. of America, 7 Cir., 62 F.2d 881, Mutual Export & Import Corp. v. Mutual Export & Import Corp. of America, D.C., 241 F. 137, and Benevolent and Protective Order of Elks of the United States v. Improved Benevolent and Protective Order of Elks of the World, 122 Tenn. 141, 118 S.W. 389; Glucose Sugar Refining Co. v. American Glucose Sugar Refining Co., N.J. Ch., 56 A. 861, each of which indicates that probability of deception or confusion is sufficient, the court held that, in the absence of any further proof, the Secretary of State could not be compelled to issue the charter.

While the issue there did not arise between hostile corporations, it was presented in a later case in the appellate court, which was not reviewed by the Supreme Court,

Lady Esther, Ltd., v. Lady Esther Corset Shoppe, Inc., 317 Ill.App. 451, 46 N.E.2d 165, 167, 148 A.L.R. 6. The court said: "Counsel for defendant contends that 'Illinois adheres to the "palming off" rule in case of unfair competition. Where there is no competition, there can be no "palming off." Since defendant was not in competition with the plaintiff, in any manner whatsoever, plaintiff was not entitled to the injunction prayed for in its complaint.' And in support of this four Illinois cases are cited: Stevens-Davis Co. v. Mather & Co., 230 Ill.App. 45; DeLong Co. v. Hump Hairpin Co., 297 Ill. 359, 130 N.E. 765; Johnson Mfg. Co. v. Johnson Skate Co., 313 Ill. 106, 144 N.E. 787; and Ambassador Hotel Co. v. Hotel Sherman Co., 226 Ill.App. 247. Without stopping to analyze the four cases, we think it sufficient to say that an examination of them discloses the fact that in each there was direct competition between the parties in the business each was conducting—plaintiff and defendant being engaged in the same line of business—and therefore the palming off rule was applicable." The court then continued: "The holding in those cases, that where there was direct competition between plaintiff and defendant there must be a 'palming off' to warrant relief, is far from saying that courts will not grant injunctive relief where the defendant's conduct is likely to cause confusion of the traders so that the public believes or is likely to believe that the goods of the defendant are the goods of the plaintiff, or that the plaintiff is in some way connected with or is a sponsor of the defendant. In such situation relief will be granted although there is no competition. 38 Harvard Law Review, 370-374, Eckhart v. Consolidated Milling Co., 72 Ill. App. 70; Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039; Ward Baking Co. v. Potter-Wrightington, 1 Cir., 298 F. 398; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509; Investors' Syndicate v. Hughes, 378 Ill. 413, 38 N.E.2d 754; Philadelphia Storage Battery Co. v. Mindlin, 163 Misc. 52, 296 N.Y. S. 176; Edison Storage Battery Co. v. Edison Automobile Co., 67 N.J.Eq. 44, 56 A. 861." The court quoted with approval from Harvard Law Review this language:

"Courts of equity in these unfair competition cases are seeking to protect the good-will and reputation of the plaintiff. Insistence by the courts upon the presence of competition between the parties can only be justified upon a theory that good-will and reputation can only be damaged by competitors. But such a theory is untenable, in the light of human experience. If the defendant's conduct is likely to cause confusion of the traders, so that the public believes or is likely to believe that the goods of the defendant are the goods of the plaintiff or that the plaintiff is in some way connected with or is a sponsor for the defendant, then a sufficient case is made out for injunctive relief. The result of a contrary rule would make the good-will and reputation of the plaintiff depend not only upon the conduct of the plaintiff but also upon the acts of the defendant and the excellence, or, what is more likely, the inferiority, of his products. * * * Another change that has come with the realization of this broad basis for 'unfair competition' is the elimination of the requirement of 'fraud.' Although the law of unfair competition has evolved through the application of principles of fraud, * * * a realization that the true basis of equity's interference in such cases is not fraud but the protection of good-will has caused many courts to question the propriety of inquiry into the defendant's mental state."

The Illinois court remarked that the motives of the defendant in adopting the name are immaterial, citing Eckhart v. Consolidated Milling Co., 72 Ill.App. 70, Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039, Ward Baking Co. v. Potter-Wrightington, 1 Cir., 287 F. 398 and gave weight to the remark of the supreme court of Illinois in Investors' Syndicate v. Hughes, 387 Ill. 413, 38 N.E.2d 754, that the modern tendency has grown to place less emphasis on competition and more on confusion. It concluded: "In the instant case we think it clear that the public might be deceived into thinking there was some connection between the defendant and the plaintiff companies. And the good-will of plaintiff, which it had built up at great expense over a period of years, would be whittled away. Courts of equity

ought not to be so feeble as to be unable to prevent this." Other illustrative cases may be found in the annotations of American Law Reports, 66 A.L.R. 948 et seq.

It is apparent from the Illinois authorities that they approve generally the rules announced in other jurisdictions, including the opinions of the federal courts they have cited. Apparently that rule is that which this court mentioned in California Fruit Growers Exchange v. Windsor Beverages, 7 Cir., 118 F.2d 149, 152, when we said: "The real test is whether the use of identical or similar trade-marks would be likely to cause confusion or mistake in the minds of the public."

That likelihood of confusion exists seems to be generally recognized as sufficient to support the complaint; it is not necessary to await consummation of threatened injury before, applying for relief. Pennsylvania v. West Virginia, 262 U.S. 553, 43 S. Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300, Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973. Thus, in Scalise et al v. National Utility Service, Inc., 5 Cir., 120 F.2d 938, 940, the court said: "It is a wrongful act to organize a domestic corporation by the same name as that already known to be used in the state by a foreign corporation, although the foreign corporation is not domesticated, but is doing business in the state without a permit, and an injunction will issue, not merely after the charter has been obtained to prevent the use of the name in unfair competition, but to restrain the procuring or issuing of the charter under the proposed name or if the charter has been issued, to restrain the use of the name." To the same effect are Purcell et al. v. Summers, D.C., 54 F.Supp. 279; Id., 4 Cir., 145 F.2d 979; General Film Co. of Missouri v. General Film Co. of Maine, 8 Cir., 237 F. 64.

Defendants rely upon the fact that plaintiff has not complained of other corporations in other states using names similar to its own. I think this wholly beside the point. Acquiescence in the use of a similar name by another corporation and failure to sue are generally held to constitute no defense. Celluloid Mfg. Co. v. Cellonite Mfg.

Co., C.C., 32 F. 94; Atlas Assur. Co. v. Atlas Ins. Co., 138 Iowa 228, 112 N.W. 232, 114 N.W. 609, 15 L.R.A.,N.S., 625, 128 Am. St.Rep. 189; State ex rel. Cohen v. Hinkle, 139 Wash. 651, 247 P. 1029.

I think the judgment should be affirmed.